J-S23013-17

2017 PA Super 214

COMMONWEALTH OF PENNSYLVANIA,

Appellee

v.

WILLIS BERRY,

Appellant

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 3839 EDA 2015

Appeal from the Judgment of Sentence December 11, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0008847-2014

BEFORE:  OLSON, SOLANO and MUSMANNO, JJ.

OPINION BY OLSON, J.:                           **FILED JULY 10, 2017**

Appellant, former Court of Common Pleas of Philadelphia County Judge Willis Berry, appeals from the judgment of sentence entered on December 11, 2015, as made final by the order entered on February 4, 2016.  In this case, we hold that the statute criminalizing conflicts of interest does not violate the doctrine of separation of powers, is not void for vagueness, and is not overbroad.  As we conclude that Appellant's remaining challenges to his convictions are without merit, we affirm his convictions.  A decision rendered by our Supreme Court during the pendency of this appeal, however, renders Appellant's sentence illegal.  Accordingly, we vacate Appellant's judgment of sentence and remand for the sole purpose of resentencing.

The Court of Judicial Discipline previously summarized the factual background of this case as follows:

From January 1996 to [June 2009, Appellant] served as a Common Pleas Court Judge in Philadelphia County, Pennsylvania. . . . Prior to becoming a judge in January 1996, [Appellant] had purchased several properties for investment purposes. . . . After becoming a judge in 1996, [Appellant] continued to own these properties and purchased an additional one, owning at one point a total of 16 different vacant or occupied properties. Several of the occupied buildings [were] multi-unit rental properties operated by [Appellant].

Many of the properties purchased by [Appellant] were in poor condition and non-compliant with various safety, building[,] and licensing codes when initially purchased, and issues concerning property condition and/or code compliance [] continued to exist while under [Appellant's] ownership. From January 1996 through and including August 2007, [Appellant] was issued in excess of 70 citations by the City of Philadelphia Department of Licenses & Inspections ([] "L&I") for various violations of safety, building[,] and licensing codes. The various citations issued by L&I included failure to obtain or maintain the proper licenses or permits, and violations involving public nuisance, building, health[,] and safety requirements. As a result of the issuance of these citations, [Appellant] was required to take corrective measures to achieve compliance with the applicable code(s) or be subject to further enforcement action.

From January 1997 through April 2007, [Appellant] used his judicial office and judicial resources, including his secretary, Carolyn Fleming ([] "Fleming"), to assist him in the day-to-day operations concerning his properties. During this time period, Fleming engaged in . . . the following activities concerning [Appellant's] rental properties on a regular and continuing basis on behalf of [Appellant], at the request of [Appellant] and/or with [Appellant's] full knowledge and complicity: maintained physical files at her work station on each of [Appellant's] tenants, containing leases, rent payment receipts, letters[,] and other correspondence; contacted prospective or current tenants in writing or by telephone; met with prospective or current tenants at the Criminal Justice Center, either in [Appellant's] chambers or other parts of the building, for purposes of signing leases, collecting rent[,] or addressing other rental issues; prepared lease agreements, eviction complaints, affidavits of possession, writs[,] and other court documents relating to rental properties; prepared [] payments[ and] mailed correspondence

to tenants regarding delinquent rental payments; filed eviction complaints, judgments[,] and other court documents [] at Landlord Tenant Court; appeared at landlord/tenant proceedings concerning [Appellant's] eviction actions; placed advertisements for [Appellant's] rental properties with local newspapers; received and returned telephone calls from prospective tenants resulting from the advertisements; corresponded with, and/or telephoned, utility companies which serviced [Appellant's] rental properties; prepared and mailed payment checks to utility companies for bills relating to [Appellant's] rental properties; prepared and made bank deposits of rental payment proceeds; [and] organized receipts relating to [Appellant's] properties for submission to an accountant for preparation of [Appellant's] tax returns.

Fleming engaged in . . . the following activities concerning all of [Appellant's] properties (both rental and non-rental), on a regular and continuing basis, on behalf of [Appellant], at the request of [Appellant] and/or with [Appellant's] full knowledge and complicity: corresponded with, telephoned[,] and/or visited L&I concerning violations issued to [Appellant]; corresponded with, telephoned[,] and/or visited various government offices (*i.e.* Water Department and Department of Revenue) for purposes of paying bills or property taxes; received invoices, prepared and mailed checks for payment of various bills relating to [Appellant's] properties, including utility companies, construction contractors, government agencies[,] and retail vendors.

The[se] activities . . . were performed by Fleming primarily at her work station in [Appellant's] judicial chambers between the hours of 8:30 a.m. and 4:30 p.m. At times, when it was necessary for [Appellant] to advertise a rental vacancy, he used, or otherwise permitted, his judicial office address and/or telephone number to be listed in classified rental advertisements, written correspondence to tenants or prospective tenants, and on rental signs. While engaging in the conduct described . . . above, [Appellant] and Fleming utilized court resources, including but not limited to, computers, telephones, fax machine, paper, envelopes[,] and postage.

*In re Berry*, 979 A.2d 991, 994–996 (Pa. Ct. Jud. Disc. 2009) (Kurtz, J.,

opinion announcing the judgment of the court) (certain paragraph breaks

and paragraph numbers omitted); **see also** Commonwealth's Exhibit 1 (stipulation of facts entered into by Appellant upon which the above factual summary was based).

The procedural history of this case is as follows. On September 4, 2014, the Commonwealth charged Appellant via criminal information with conflict of interest[1] and theft of services.[2] On February 9, 2015, Appellant moved to dismiss the charges. The motion was denied prior to trial. On July 22, 2015, Appellant was found guilty of both offenses. On December 11, 2015, the trial court sentenced Appellant to an aggregate term of three years' probation and deferred a determination regarding the amount of restitution owed by Appellant.

On December 15, 2015, Appellant filed a notice of appeal. On February 4, 2016, the trial court set the amount of restitution.[3] On February 8, 2016, the trial court ordered Appellant to file a concise statement of

---

[1] 65 Pa.C.S.A. § 1103(a).

[2] 18 Pa.C.S.A. § 3926(b).

[3] This procedure violated 18 Pa.C.S.A. § 1106(c)(2) as interpreted by **Commonwealth v. Deshong**, 850 A.2d 712 (Pa. Super. 2004). In **Deshong**, this Court held "that restitution must be determined at the time of sentencing if the restitution is imposed as a direct sentence." **Commonwealth v. Schrader**, 141 A.3d 558, 562 (Pa. Super. 2016). Furthermore, this Court held that when restitution is not imposed at the same time as the judgment of sentence, the restitution order makes the judgment of sentence a final, appealable order. **Id.**, *citing* **Deshong**, 850 A.2d at 714 n.1. Therefore, Appellant's judgment of sentence did not become final until February 4, 2016. Pursuant to Pennsylvania Rule of Appellate Procedure 905(a)(5), Appellant's notice of appeal is considered filed as of that date.

errors complained of on appeal ("concise statement"). **See** Pa.R.A.P. 1925(b). On February 29, 2016, Appellant filed his concise statement. On April 26, 2016, the trial court issued its Rule 1925(a) opinion. Both of Appellant's issues were included in his concise statement.

Appellant presents two issues for our review:

1. Whether the trial court erred, abused its discretion, and unfairly prejudiced [Appellant] when [it] denied the motion to discharge and dismiss the case[?]

2. Whether the trial court erred, abused its discretion, and unfairly prejudiced [Appellant] when [it] foreclosed defense counsel from questioning a witness about an oral agreement not to prosecute[?]

Appellant's Brief at 4 (complete capitalization omitted).

In his first issue, Appellant argues that the trial court erred in denying his motion to dismiss because 65 Pa.C.S.A. § 1103(a) and 18 Pa.C.S.A. § 3926(a)(1) are unconstitutional. As the constitutionality of a statute is a pure question of law, our standard of review is *de novo* and our scope of review is plenary. **Commonwealth v. Proctor**, 156 A.3d 261, 268 (Pa. Super. 2017) (citation omitted). "Our Supreme Court has instructed that we must presume that statutes are constitutional and require those challenging the constitutionality of a statute to demonstrate that it clearly, plainly, and palpably violates the constitution." **Commonwealth v. Felder**, 75 A.3d 513, 516 (Pa. Super. 2013), *appeal denied*, 85 A.3d 482 (Pa. 2014) (citation omitted).

- 5 -

"When attacking the constitutionality of a statute, an appellant can raise two types of challenges: facial and as-applied." *Commonwealth v. Thompson*, 106 A.3d 742, 763 (Pa. Super. 2014), *appeal denied*, 134 A.3d 56 (Pa. 2016) (citation omitted). Appellant facially challenges sections 1103(a) and 3926(a)(1). A defendant "can succeed in a facial challenge to the constitutionality of a statute only by establishing that no set of circumstances exists under which the challenged statute would be valid, *i.e.*, that the law is unconstitutional in all of its applications[.]" *Commonwealth v. McKown*, 79 A.3d 678, 687 (Pa. Super. 2013), *appeal denied*, 91 A.3d 162 (Pa. 2014) (citations omitted).

Appellant first challenges the constitutionality of section 3926(a)(1).[4] Although the docket and judgment of sentence state Appellant was convicted under section 3926(a)(1), these were patent and obvious clerical errors.

---

[4] Section 3926(a)(1) provides that it is illegal for an individual to

> obtain[] services for himself or for another which he knows are available only for compensation, by deception or threat, by altering or tampering with the public utility meter or measuring device by which such services are delivered or by causing or permitting such altering or tampering, by making or maintaining any unauthorized connection, whether physically, electrically or inductively, to a distribution or transmission line, by attaching or maintaining the attachment of any unauthorized device to any cable, wire or other component of an electric, telephone or cable television system or to a television receiving set connected to a cable television system, by making or maintaining any unauthorized modification or alteration to any device installed by a cable television system, or by false token or other trick or artifice to avoid payment for the service.

18 Pa.C.S.A. § 3926(a)(1).

***See Commonwealth v. Young***, 695 A.2d 414, 419-420 (Pa. Super. 1997).

Appellant was charged with, and convicted of, violating 18 Pa.C.S.A. § 3926(b).[5] ***See*** Criminal Information, 9/11/14, at 1; N.T., 7/22/15, at 32. Accordingly, we need not address the constitutionality of section 3926(a)(1) as Appellant was not convicted of violating that statute.[6] As we ultimately vacate Appellant's judgment of sentence and remand for resentencing, we decline to modify the trial court's sentencing order.

Appellant argues that section 1103(a) is facially unconstitutional for three reasons. First, he argues that it exceeded the General Assembly's authority under the Pennsylvania Constitution. Second, he argues that it is unconstitutionally overbroad because it infringes upon his right to freedom of speech. Third, he argues that it is unconstitutionally vague.

Section 1103(a) provides that, "No public official or public employee shall engage in conduct that constitutes a conflict of interest." 65 Pa.C.S.A. § 1103(a). "Conflict of interest" is defined as

> Use by a public official or public employee of the authority of his office or employment or any confidential information received through his holding public office or employment for the private pecuniary benefit of himself, a member of his immediate

---

[5] Section 3926(b) provides that it is illegal for an individual to "hav[e] control over the disposition of services of others to which he is not entitled, [and] knowingly divert[] such services to his own benefit or to the benefit of another not entitled thereto." 18 Pa.C.S.A. § 3926(b).

[6] To the extent that Appellant argues that section 3926(b) violates the separation of powers doctrine, that argument is without merit. ***See Commonwealth v. Orie Melvin***, 103 A.3d 1, 15 (Pa. Super. 2014), *appeal discontinued*, 440 WAL 2014 & 441 WAL 2014 (Pa. Oct. 28, 2014).

family[,] or a business with which he or a member of his immediate family is associated. The term does not include an action having a *de minimis* economic impact or which affects to the same degree a class consisting of the general public or a subclass consisting of an industry, occupation or other group which includes the public official or public employee, a member of his immediate family[,] or a business with which he or a member of his immediate family is associated.

65 Pa.C.S.A. § 1102.

Appellant first contends that section 1103(a) violates the doctrine of separation of powers in that the General Assembly overstepped its authority in passing the statute. As our Supreme Court has explained, "Under the doctrine of separation of powers, the legislature may not exercise any power specifically entrusted to the judiciary, which is a co-equal branch of government. . . . Legislation that infringes on [our Supreme] Court's authority over courts is invalid." **Kremer v. State Ethics Comm'n**, 469 A.2d 593, 595 (Pa. 1983) (citations and paragraph break omitted). Article V, section 10(c) of the Pennsylvania Constitution defines the authority of our Supreme Court over the judiciary and the judicial branch of state government. It provides, in relevant part, that our

Supreme Court shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts, justices of the peace and all officers serving process or enforcing orders, judgments or decrees of any court or justice of the peace, including . . . the administration of all courts and supervision of all officers of the Judicial Branch[.]

Pa. Const. art. V, § 10(c). Appellant argues that section 1103(a) infringes upon our Supreme Court's power under section 10(c) to regulate, exclusively, members of the judiciary.

Although neither this Court nor our Supreme Court has addressed a separation of powers challenge to section 1103(a), we find instructive this Court's analysis of a similar issue in **Commonwealth v. Orie Melvin**, 103 A.3d 1 (Pa. Super. 2014), *appeal discontinued*, 440 WAL 2014 & 441 WAL 2014 (Pa. Oct. 28, 2014). Former-Justice Orie Melvin was convicted of theft of services, conspiracy to commit theft of services,[7] conspiracy to tamper with evidence,[8] and misapplication of entrusted property.[9] The conviction arose from use of chambers personnel, office equipment, and supplies in the course of her campaign for our Supreme Court. Like Appellant in the case *sub judice*, she argued that these criminal statutes, as applied to members of the judiciary, violated the doctrine of separation of powers.

This Court rejected Orie Melvin's argument explaining that, in the cases in which our Supreme Court invalidated statutes pursuant to the separation of powers doctrine, *e.g.*, **Commonwealth v. Stern**, 701 A.2d 568 (Pa. 1997), **Kremer**, and **In re Dobson**, 534 A.2d 460 (Pa. 1987), our

> Supreme Court had adopted rules regulating the specific conduct
> of attorneys and judges, thus establishing in each instance [our]

---

[7] 18 Pa.C.S.A. §§ 903, 3926.

[8] 18 Pa.C.S.A. §§ 903, 4910.

[9] 18 Pa.C.S.A. § 4113(a).

Supreme Court's intention to exercise its authority to regulate the conduct at issue. More importantly, in each of those cases, the Legislature attempted to regulate precisely the same conduct covered by [our] Supreme Court rules. That symmetry does not exist in this case.

*Orie Melvin*, 103 A.3d at 15

The other two cases cited by Appellant are similar to *Stern*, *Kremer*, and *Dobson*. In *Wajert v. State Ethics Comm'n*, 420 A.2d 439 (Pa. 2003), our Supreme Court held that a statute prohibiting former judges from practicing before courts they had served on for one year after leaving the bench was unconstitutional. *Id.* at 442. As our Supreme Court explained, "Long before the [statute] was enacted, [our Supreme] Court adopted the Code of Professional Responsibility enunciating the standards governing the professional conduct of those engaged in the practice of law in this Commonwealth[.]" *Id.* Thus, because the General Assembly attempted to regulate precisely the same conduct, our Supreme Court determined that the statute violated the doctrine of separation of powers.

Our Supreme Court invalidated 65 Pa.C.S.A. § 1103(g) on similar grounds in *Shaulis v. State Ethics Comm'n*, 833 A.2d 123 (Pa. 2003). Section 1103(g) prohibited former government employees from representing any person before his or her former government employer. Our Supreme Court explained that this prohibition targeted the practice of law. *Id.* Thus, in both *Wajert* and *Shaulis*, the unconstitutional statutes directly regulated the practice of law, over which our Supreme Court has exclusive control.

- 10 -

As in **Orie Melvin**, the symmetry present in **Stern**, **Kremer**, **Dobson**, **Shaulis**, and **Wajert** is not present in this case. At all times relevant to this case, the Code of Judicial Conduct provided that a judge "should not lend the prestige of [his or her] office to advance the private interests of others[.]" Pennsylvania Code of Judicial Conduct Canon 2B (2004); Pennsylvania Code of Judicial Conduct Canon 2B (2006). This prohibition is not the same as the conduct criminalized by section 1103(a). Section 1103(a) criminalizes the use of the **authority** of an individual's office, not the **prestige** associated therewith. Neither the pre-2005 nor the post-2005 versions of the Code of Judicial Conduct specified that a judge should not use the authority of his or her office to advance his or her own private interest. Instead, both the pre-2005 and post-2005 versions of the Code of Judicial Conduct only required a judge to disqualify himself or herself if an assigned case impacted his or her pecuniary interests. **See** Pennsylvania Code of Judicial Conduct Canon 3C(1)(c) (2004); Pennsylvania Code of Judicial Conduct Canon 3C(1)(c) (2006). As is evidenced by the factual background of this case, Appellant did not hear cases in which he had a personal financial interest. Instead, he used the authority of his office by directing his secretary to administer his real estate business and used court resources to avoid overhead costs.

We acknowledge that the Court of Judicial Discipline found that Appellant violated the Code of Judicial Conduct by bringing the judiciary into disrepute. **See Berry**, 979 A.2d at 1001-1003. That very broad finding

under the Code of Judicial Conduct, however, is insufficient for us to conclude that section 1103(a) governs a precise form of conduct regulated by our Supreme Court. As this Court has explained:

> Both the pre–2005 and post–2005 versions of the Code [of Judicial Conduct] contain seven "canons." Canon 2A sets forth the directive from [our] Supreme Court that "judges should respect and comply with the law." Thus, under [Appellant's] theory, no judge could be prosecuted for the violation of any criminal statute. The absurdity of this hypothesis is self-evident.

***Orie Melvin***, 103 A.3d at 16 n.6 (ellipsis omitted).

Recently, our Supreme Court re-affirmed that general restrictions, *i.e.*, those that apply to all Commonwealth employees and not just attorneys and/or judges, do not offend the separation of powers doctrine. ***See Yocum v. Gaming Control Bd.***, 2017 WL 2291771, *9 (Pa. May 25, 2017). Section 1103(a) is one such general restriction. It prohibits conflicts of interest by all public employees and not just judges and attorneys. Combined with the fact that our Supreme Court has not explicitly regulated conflicts of interest in the Code of Judicial Conduct, this indicates that section 1103(a) does not infringe upon our Supreme Court's authority to regulate members of the judiciary. Accordingly, we hold that section 1103(a), as applied to jurists, does not violate the doctrine of separation of powers.

Appellant's argument that section 1103(a) is unconstitutionally overbroad because it infringes upon his right to freedom of speech is also without merit. This Court has held that section 1103(a) does not infringe

upon an individual's right to freedom of speech. ***Commonwealth v. Orie***, 88 A.3d 983, 1026 (Pa. Super. 2014), *appeal denied*, 99 A.3d 925 (Pa. 2014). In a related challenge, Appellant attempts to show that section 1103(a) is unconstitutionally vague on its face. As this Court explained, however:

> For a court to entertain challenges of facial vagueness, the claims must involve First Amendment issues. When a case does not implicate First Amendment matters, vagueness challenges are to be evaluated in light of the facts at hand—that is, the statute is to be reviewed as applied to the defendant's particular conduct.

***Id.*** at 1024 (citation omitted). As noted above, this case does not implicate First Amendment matters. Accordingly, we must examine Appellant's void-for-vagueness challenge as an as-applied challenge and not a facial challenge.

> As this Court explained
>
> A statute may be deemed to be unconstitutionally vague if it fails in its definiteness or adequacy of statutory expression. This void-for-vagueness doctrine, as it is known, implicates due process notions that a statute must provide reasonable standards by which a person may gauge his future conduct, *i.e.*, notice and warning.
>
> Specifically with respect to a penal statute . . . to withstand constitutional scrutiny based upon a challenge of vagueness a statute must satisfy two requirements. A criminal statute must define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.

***Commonwealth v. Kakhankham***, 132 A.3d 986, 990–991 (Pa. Super. 2015), *appeal denied*, 138 A.3d 4 (Pa. 2016) (internal quotation marks and citations omitted).

Appellant contends that the definition of conflict of interest is unconstitutionally vague in two respects. First, he argues that the term "private pecuniary gain" does not provide defendants with adequate notice of which conduct is criminalized by the statute. Second, he argues that the term "*de minimis* economic impact" similarly does not provide defendants with adequate notice of which conduct is criminalized by the statute.

Appellant's argument that section 1103(a) is unconstitutionally vague because of the term "private pecuniary gain" is without merit. "There is nothing unclear about the concept of . . . private pecuniary benefit." ***Commonwealth v. Habay***, 934 A.2d 732, 738 (Pa. Super. 2007), *appeal denied*, 954 A.2d 575 (Pa. 2008). Thus, this Court has held that section 1103(a) is not unconstitutionally vague because of that phrase. ***Id.*** at 738-739.

In this case, Appellant acquired a vast array of private pecuniary benefits. He received free postage, telephone calls, and office supplies for his private business. He was not required to rent an office as he used his judicial chambers. Most glaringly, Appellant used his secretary as a *de facto* employee for his rental business. The criminal characterization of these pecuniary benefits is not vague. An ordinary person would understand this

conduct is included within the definition of conflict of interest. Moreover, it was not arbitrary and capricious to find that Appellant's conduct led to private pecuniary gain.

This Court has also specifically rejected Appellant's argument that *Skilling v. United States*, 561 U.S. 358 (2010) rendered section 1103(a) unconstitutionally vague. *Commonwealth v. Feese*, 79 A.3d 1101, 1128 (Pa. Super. 2013).

> As this Court explained:
>
> In *Skilling*, the Supreme Court of the United States held that the honest services statute, 18 U.S.C. § 1346, was limited in application to bribe and kickback schemes, and that any additional interpretations, particularly those that included deprivations not only of money or property, but also of intangible rights, would run afoul of the vagueness doctrine.
>
> The statutory text of the honest services statute at issue in *Skilling* is not remotely similar to that of the instant case. Furthermore, the Commonwealth did not allege any sort of intangible right deprivation as the basis of charging [a]ppellant with violations of [section 1103(a)]. Accordingly, *Skilling* does not undermine the holding in *Habay*, nor does it have any controlling or persuasive authority in the instant case.

*Feese*, 79 A.3d at 1128 (internal alteration, quotation marks, and citation omitted). The same is true in the case *sub judice*. The Commonwealth did not allege that Appellant deprived it of intangible benefits. Instead, the Commonwealth alleged that Appellant deprived the Commonwealth of tangible benefits, *e.g.*, the funds and resources expended in the administration of Appellant's real estate business. Therefore, Appellant's reliance on *Skilling* is misplaced.

Appellant's argument that section 1103(a) is unconstitutionally vague because of the term "*de minimis* economic impact" is also without merit. Section 1102 defines the term "*de minimis* economic impact" as "[a]n economic consequence which has an insignificant effect." 65 Pa.C.S.A. § 1102. This is a straightforward definition which uses common words. Appellant's use of court resources over an extended period of time, as recounted above, clearly had an economic consequence which was not insignificant. **See Berry**, 979 A.2d at 1001. In addition to using court funds to send mail related to his rental business, Appellant did not hire a secretary, rent office space, or obtain a business telephone line. Instead, he used his position as a judge on the Philadelphia Court of Common Pleas to attain these goods and services. Accordingly, we conclude that section 1103(a) is not void-for-vagueness as applied to Appellant.

In his second issue, Appellant argues that the trial court abused its discretion in limiting his re-direct examination of Samuel Stretton, Esq., who represented him before the Court of Judicial Discipline.[10] Appellant's counsel asked Attorney Stretton, "Did you have any understanding with the adversary about whether or not there was going to be any criminal prosecution of Judge Berry?" N.T., 7/22/15, at 27. The Commonwealth objected and the trial court sustained the objection. We review a trial court's decision to limit re-direct examination for an abuse of discretion.

_____

[10] Attorney Stretton also represented Appellant before the trial court in his criminal proceedings.

- 16 -

*See Estate of Hicks v. Dana Companies, LLC*, 984 A.2d 943, 972 (Pa. Super. 2009), *appeal denied*, 19 A.3d 152 (Pa. 2011).

The evidence Appellant attempted to elicit from this question was irrelevant. In order for evidence to be relevant, it must have a "tendency to make a fact more or less probable than it would be without the evidence." Pa.R.Evid. 401(a). Whether Appellant or Attorney Stretton had an understanding regarding prosecution following the proceedings before the Court of Judicial Discipline did not make it more or less likely that Appellant violated section 1103(a) and/or 3926(b). Instead, this question related only to whether Appellant's prosecution was barred by an agreement with the Commonwealth. That is a purely legal question which is for the trial court, and not the jury, to determine. *Cf. Commonwealth v. Ginn*, 587 A.2d 314, 316-317 (Pa. Super. 1991) (affirming trial court's enforcement of non-prosecution agreement as it was a purely legal question). As the evidence Appellant attempted to elicit by this question was irrelevant, we ascertain no abuse of discretion in the trial court's order sustaining the Commonwealth's objection.

Finally, we *sua sponte* consider the legality of Appellant's sentence. *See Commonwealth v. McCamey*, 154 A.3d 352, 357 (Pa. Super. 2017) (citation omitted). On February 4, 2016, as part of its judgment of sentence, the trial court ordered Appellant to pay restitution to the

Commonwealth.[11] Nine months later, in **Commonwealth v. Veon**, 150 A.3d 435 (Pa. 2016), our Supreme Court held that the Commonwealth cannot be a victim eligible for restitution under 18 Pa.C.S.A. § 1106. **Id.** at 448-455. As such, we conclude that Appellant's sentence was illegal insofar as it ordered him to pay restitution to the Commonwealth. As the restitution was a critical part of the sentencing scheme, we vacate Appellant's entire judgment of sentence and remand for resentencing. **See id.** at 456.

In sum, we hold that the statute criminalizing conflicts of interest does not violate the doctrine of separation of powers, is not void for vagueness, and is not overbroad. We conclude that the trial court properly excluded an alleged non-prosecution agreement between Appellant and the Commonwealth. Appellant's sentence, however, is illegal since the Commonwealth cannot be deemed a "victim" for purposes of ordering restitution. Accordingly, we affirm Appellant's convictions, vacate his judgment of sentence, and remand for the sole purpose of resentencing.

Judgment of sentence affirmed in part and vacated in part. Case remanded. Jurisdiction relinquished.

---

[11] The trial court did so in accordance with this Court's then-binding precedent of **Commonwealth v. Veon**, 109 A.3d 754 (Pa. Super. 2015), *vacated*, 150 A.3d 435 (Pa. 2016).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/10/2017