J-A06041-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| KELLY MARIE D'ADDERIO | : | |
| | : | |
| Appellant | : | No. 833 MDA 2018 |

Appeal from the Judgment of Sentence April 16, 2018
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0005317-2016

BEFORE:   OTT, J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY NICHOLS, J.:                    **FILED JUNE 17, 2019**

Appellant Kelly Marie D'Adderio appeals from the judgment of sentence imposed following her jury trial conviction for harassment.[1]  Appellant alleges that the Commonwealth presented insufficient evidence to support her conviction because Appellant engaged in speech that was protected under the United States and Pennsylvania constitutions.  Appellant also argues that the harassment statute is unconstitutionally overbroad.  We affirm.

The trial court set forth the relevant facts of this appeal as follows:

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 2709(a)(4).

On Friday, June 10, 2016, Appellant posted a message on her Facebook page[2] that read:

> Dear Miss Maria Memmi, you were a life-long friend of mine, my son's Godmother even. The day you crossed the friendship line and married my ex was the day you exposed your true colors. Ironically, that was the least of my concerns. Sadly, I find some pleasure that he cheated on you. I kind of feel you had it coming anyway. You seem obsessed with playing mommy to my kids. Let's see how that works out for you. #slouchback #truefriend #hunchcunt #pretendmom #hecheated.

Soon thereafter, Appellant posted another message:

> Dear Derry Township School Board Member, the board president was notified about you turning a blind eye about drug use in my home by some of your students. After being notified, he called it a family matter. That's fine. I would like to see what the PSBA thinks. If they think it's a family matter, then I will let it rest.

Maria Memmi is the current wife of Phillip D'Adderio, Appellant's former husband. She is also a member of the Derry Township School Board. Ms. Memmi, who did not have a Facebook account at the time, became aware of the posts later that day when her stepchildren showed them to her. Ms. Memmi thereafter reported the posts to Detective Robert Matthew Dotts of the Derry Township Police, who in turn contacted Appellant and suggested that she take them down. Appellant did not follow this suggestion. She continued to post increasingly offensive comments throughout the weekend, referring to Ms. Memmi as "hunch cunt" and "whore," questioning the paternity of Ms. Memmi's minor daughter, and suggesting that Ms. Memmi was carrying on an inappropriate relationship with the detective.[fn4]

---

[2] "Facebook is a social networking site where '[u]sers of that Web site may post items on their Facebook page that are accessible to other users, including Facebook 'friends' who are notified when new content is posted.'" **Commonwealth v. Mangel**, 181 A.3d 1154, 1159 (Pa. Super. 2018) (citation omitted).

[fn4] [Appellant's additional comments, posted on Facebook between June 10, 2016 and June 12, 2016, included the following:] "Dear Little Memmi Girl, [referring to Ms. Memmi's 9-year-old daughter,] who is your daddy? The entire town is requesting a paternity test. Many others have told me Phil [D'Adderio] is your daddy. What is the truth? Call the popo hunchback."

"Dear hunch cunt, that's what Phil called you. LOL. You're fat, gross, and ugly. You can arrest me. I really don't care as long as I get the truth out."

"Haha, hunch cunt called the police. I thought you weren't on FB. You whore."

"Dear hunch cunt, talked to the detective. Are you sucking his cock? After all, he is a cutie patootie."

"When you ride Phil's ginormous cock, do you ever think of the last pussy it was in? I would."

Trial Ct. Op., 7/19/18, at 3-4 (record citations omitted).

The Commonwealth filed a criminal complaint against Appellant on June 16, 2016. The complaint alleged that Appellant directed multiple Facebook posts to Ms. Memmi "that were vulgar and inflammatory," and Appellant "called [Ms. Memmi] derogatory names, questioned the paternity of her child, and challenged her to pursue legal prosecution."[3] Criminal Compl., 6/16/16, at 3. On March 13, 2017, the Commonwealth filed a criminal information charging Appellant with harassment.

---

[3] The complaint also noted that the Commonwealth had charged Appellant at another docket number with a separate count of harassment, 18 Pa.C.S. § 2709(a)(3), for phone calls and text messages Appellant made to Ms. Memmi on May 27, 2016. Ultimately, a jury acquitted Appellant of that separate charge.

- 3 -

Appellant filed an omnibus pretrial motion on December 5, 2017, which included a motion to quash or dismiss the criminal information. Appellant argued that, "to the extent that the Commonwealth is charging [Appellant] solely with engaging in 'lewd' and 'lascivious' speech, the information must be dismissed because such speech is protected speech under the First Amendment." Omnibus Pretrial Mot., 12/5/17, at ¶12. The trial court denied Appellant's motion.

Following trial, a jury convicted Appellant of one count of harassment. On April 16, 2018, the trial court sentenced Appellant to twelve months of probation, one hundred hours of community service, plus fines and costs. The court also ordered Appellant to have no contact with the child referenced in the Facebook posts, until the child reaches age eighteen.

Appellant timely filed a notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The trial court filed a responsive opinion concluding that the Commonwealth presented sufficient evidence to support the conviction. Specifically, the Commonwealth's evidence enabled the jury to determine that Appellant posted lewd messages on Facebook, which served no legitimate purpose of communication, with the intent to harass, annoy, or alarm the complainant.[4]

---

[4] The trial court acknowledged Appellant's argument "that her conviction is an unconstitutional restriction on speech unless it is based either on comments made directly to the victim, or on obscene comments about the victim." Trial Ct. Op. at 6. However, the court did not address this argument, "[b]ecause the jury did not make any specific findings regarding these distinctions. . . ." *Id.*

- 4 -

The court further concluded that the statute governing harassment is not unconstitutionally overbroad, relying on this Court's holding in *Commonwealth v. Duncan*, 363 A.2d 803, 808 (Pa. Super. 1976).

Appellant now raises two questions for this Court's review:

[1]. Was not the evidence insufficient to support [Appellant's] conviction for harassment, 18 Pa.C.S. § 2709(a)(4), where [Appellant's] engaging in purportedly lewd and lascivious speech **about**—not **to**—another person is protected speech under the United States and Pennsylvania Constitutions and where [Appellant's] speech cannot be construed as obscene?

[2]. Is the version of harassment set forth at 18 Pa.C.S. § 2709(a)(4) unconstitutionally overbroad on its face because a substantial number of its applications criminalize constitutionally protected free speech?

Appellant's Brief at 5 (full capitalization and quotation marks omitted) (emphasis in original).

In her first issue, Appellant contends her sufficiency challenge "is based on the premise that her conduct was protected speech under the Federal and Pennsylvania Constitutions," and this Court must engage in an independent review of the record to ensure that "the judgment does not constitute a forbidden intrusion on the field of free expression." *Id.* at 14, 15 (citation omitted). Appellant acknowledges that the jury was not required to make a finding as to whether her remarks were directed "to" or "about" the complainant. *Id.* at 18. Appellant contends, however, "[t]he Facebook postings must be construed as communications **about** the complainant and

not **to** the complainant, especially because the complainant did not maintain a Facebook account." *Id.* at 19 (emphasis in original).

Appellant insists that criminal liability cannot attach to lewd and lascivious speech "about" another person, because such speech is constitutionally protected.[5] *Id.* Appellant claims that her harassment "conviction can survive only if [Appellant] made 'obscene' communications about the complainant, as that word is defined in the constitutional jurisprudence." *Id.* Further, Appellant argues that her speech did not satisfy the definition of obscenity, because the posts were "not an appeal to the prurient interests of the intended Facebook audience." *Id.* at 29. Appellant concludes that "the evidence was insufficient to sustain a conviction for the version of harassment at [Section] 2709(a)(4) to the extent that that provision can be interpreted consistently with the free speech protections of the First Amendment." *Id.* at 30.

The Pennsylvania Crimes Code defines the offense of harassment, in pertinent part, as follows:

---

[5] Appellant cites numerous federal cases that generally stand for the proposition that speech cannot be construed as criminal conduct merely because it is crude or arouses contempt. *See* Appellant's Brief at 21-22. For her contention that lewd and lascivious speech "about" another person is constitutionally protected, Appellant relies on a law review article and a decision from the New Jersey Supreme Court. *Id.* at 22-25. However, Appellant has not cited, nor has this Court found, any binding case law adopting the distinction between communications "to" and "about" a person referenced by Appellant. Consequently, we emphasize that this Court is not bound by the decisions of other states' courts and the federal courts, except for the Supreme Court of the United States. *See Commonwealth v. Lukach*, 163 A.3d 1003, 1009 (Pa. Super. 2017).

**§ 2709. Harassment**

**(a) Offense defined.—**A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person:

\* \* \*

(4) communicates to or about such other person any lewd, lascivious, threatening or obscene words, language, drawings or caricatures[.]

18 Pa.C.S. § 2709(a)(4).

With the enactment of 18 Pa.C.S. [§] 2709, our legislature has sought to prohibit such conduct, including speech, which is not Constitutionally protected and which is intended to alarm or seriously annoy another person. The purpose of the legislature, undoubtedly, was to extend to the Individual the protections which have long been afforded the general public under disorderly conduct and breach of the peace statutes.

**Duncan**, 363 A.2d at 807.

Where an issue raises constitutional concerns, this Court "must make an independent constitutional judgment on the facts of the case as to whether the material involved is constitutionally protected." **Commonwealth v. Lebo**, 795 A.2d 987, 991 (Pa. Super. 2002) (citations and quotation marks omitted). Nevertheless, "it has never been deemed an abridgment of freedom of speech or press to make . . . conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written or printed." **Commonwealth v. Schierscher**, 668 A.2d 164, 171 (Pa. Super. 1995) (quoting **Cox v. Louisiana**, 379 U.S. 559, 563 (1965)).

"[I]t is well understood that the right of free speech is not absolute at all times and under all circumstances." *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571 (1942) (footnote omitted). "There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem." *Id.* at 571-72 (footnotes omitted); *see also United States v. Petrovic*, 701 F.3d 849, 855-56 (8th Cir. 2012) (explaining that First Amendment protections are often less rigorous where matters of purely private significance are at issue, because restricting speech on private matters does not implicate the same constitutional concerns as limiting speech on matters of public interest; further, the public had no legitimate interest in the private sexual activities of the victim or in the embarrassing facts revealed about her life). "Resort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal act would raise no question under that instrument." *Chaplinsky*, 315 U.S. at 572 (citation omitted).

Instantly, Appellant's Facebook posts did not express social or political beliefs or constitute legitimate conduct. *See Duncan*, 363 A.2d at 807 (explaining that the defendant did not engage in any legitimate conduct when he made repeated requests for the victim to participate in lewd acts). Rather, Appellant made lewd comments, including sexualized language and references to the complainant's sexual activity, which could only serve to harass, annoy or alarm the complainant. *See Commonwealth v. Cox*, 72 A.3d 719, 721-

22 (Pa. Super. 2013) (holding that sufficient evidence supported a conviction under Section 2709(a)(4), where the defendant communicated "lewd" sentiments in a Facebook post indicating that the victim was sexually active and suffered from a sexually transmitted disease; noting that the definition of "lewd" is "sexually unchaste or licentious").[6]

To the extent one can argue that "lewd" and "lascivious" must be interpreted as synonymous with "obscene," the Pennsylvania Supreme Court has declined to validate such an argument, albeit in a different statutory context. *See Commonwealth v. MacDonald*, 347 A.2d 290, 304 (Pa. 1975) (plurality) (rejecting the Commonwealth's argument that "lewd" is a synonym for "obscene" when analyzing a statute that authorized an injunction against the use of any building for the purpose of fornication, lewdness, assignation, and/or prostitution; when viewed in context, the statute proscribed the use of any building for purposes involving illicit sexual conduct, thereby strongly indicating a legislative intention to prescribe only purposes of that type by using the word "lewdness"). Moreover, "[w]hen reviewing a statute, we may not render language superfluous or assume language to be mere surplusage." *Commonwealth v. Dischman*, 195 A.3d 567, 571 (Pa. Super. 2018) (citation and quotation marks omitted). Because "lewd" is not synonymous

---

[6] Appellant notes that *Cox* "did not assert any constitutional claim based on freedom of speech under the First Amendment." Appellant's Brief at 20. Although Appellant is correct in this regard, *Cox* remains instructive for the proposition that Facebook posts regarding a complainant's sexual activity can be characterized as "lewd" under Section 2709(a)(4).

with "obscene," we do not examine whether Appellant's posts also satisfy the definition of "obscene," because the posts qualify as "lewd" under existing Pennsylvania case law. *See Cox*, 72 A.3d at 722.

Based upon our own independent review of the record, Appellant's comments are not entitled to First Amendment protection, regardless of whether the posts were "to" or "about" the complainant. *See Chaplinsky*, 315 U.S. at 571-72; *Lebo*, 795 A.2d at 991; *Duncan*, 363 A.2d at 807. Therefore, Appellant's first issue warrants no relief.

In her second issue, Appellant contends that "a law may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." Appellant's Brief at 31 (citations and quotation marks omitted). Further, Appellant relies on *Commonwealth v. Omar*, 981 A.2d 179, 185-86 (Pa. 2009), for the proposition that "a litigant asserting an overbreadth challenge is not required to demonstrate that the statute violated his own protected speech, but instead may prove a statute's unconstitutionality by demonstrating that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Id.* at 32 (quotation marks omitted). Appellant concludes that Section 2709(a)(4) is overbroad, because it criminalizes "lewd and/or lascivious speech **about** another person[, which] is constitutionally protected." *Id.* at 33 (emphasis in original).

"As the constitutionality of a statute is a pure question of law, our standard of review is *de novo* and our scope of review is plenary."

*Commonwealth v. Berry*, 167 A.3d 100, 104 (Pa. Super. 2017) (citation omitted).

> [T]here is a strong presumption in the law that legislative enactments do not violate the constitution. Moreover, there is a heavy burden of persuasion upon one who challenges the constitutionality of a statute. While penal statutes are to be strictly construed, the courts are not required to give the words of a criminal statute their narrowest meaning or disregard the evident legislative intent of the statute. A statute, therefore, will only be found unconstitutional if it "clearly, palpably and plainly" violates the constitution.

*Commonwealth v. Grove*, 170 A.3d 1127, 1144-45 (Pa. Super. 2017) (citation omitted).

"An overbreadth challenge is generally limited to issues falling under the First Amendment of the United States Constitution, protecting the right to free speech." *Omar*, 981 A.2d at 185 (citation omitted).

> We have recognized that the Constitution provides significant protection from overbroad laws that chill speech within the First Amendment's vast and privileged sphere. When protected expression, such as political speech, is at issue, both the U.S. Supreme Court and [the Pennsylvania Supreme] Court have recognized that the overbreadth doctrine permits the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when judged in relation to the statute's plainly legitimate sweep. It has been the judgment of [the Pennsylvania Supreme] Court that the possible harm to society in permitting some unprotected speech to go unpunished is outweighed by the possibility that protected speech of others may be muted and perceived grievances left to fester because of the possible inhibitory effects of overly broad statutes.

                              *     *     *

The standard for determining whether a statute is overbroad is well established:

A statute is unconstitutionally overbroad only if it punishes lawful constitutional protected activity as well as illegal activity. Thus, in determining whether a statute is unconstitutional due to overbreadth, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. The overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep. Consequently, if a statute's overbreadth is substantial, it may not be enforced against anyone until it is narrowed to reach only unprotected activity.

*Id.* at 185-86 (citations, quotation marks, and brackets omitted).

Regarding Section 2709, this Court has determined that a prior version of the statute passed constitutional muster:

In enacting 18 Pa.C.S. [§] 2709(3), our legislature did not intend to proscribe isolated acts which would be of only minor annoyance to the average person, or which are constitutionally protected. The statute requires . . . acts which would seriously offend, we find, the average person; it requires the fact finder to infer a specific intent on the part of the accused, and it specifies that the conduct must be of a non-legitimate nature—conduct which is not constitutionally protected.

*Duncan*, 363 A.2d at 808.[7]

Instantly, Section 2709(a)(4) requires an intent to harass, and it seeks to preclude communications lacking some legitimate purpose. As such, the

---

[7] The version of Section 2709 at issue in *Duncan* defined the offense of harassment as follows: "A person commits a summary offense when, with intent to harass, annoy or alarm another person[, he or she] engages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such other person and which serve no legitimate purpose." *Duncan*, 363 A.2d at 805. We note that the current version of Section 2709(a)(4) is graded as a misdemeanor of the third degree.

statute does not punish constitutionally protected speech, and the statute is not facially overbroad. *See id.*; *see also Commonwealth v. Hendrickson*, 724 A.2d 315, 318 (Pa. 1999) (evaluating an overbreadth challenge to the now-repealed harassment by communication statute and concluding that the defendant was not convicted for exercising his constitutional right to free speech; the statute at issue was directed at the harassing nature of the communications, which the legislature had a legitimate interest in proscribing). In light of the applicable scope and standard of review and relevant case law, we conclude that Section 2709(a)(4) is not unconstitutionally overbroad. *See Omar*, 981 A.2d at 185-86; *Berry*, 167 A.3d at 104. Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judge Ott joins in the memorandum.

Judge Pellegrini noted to dissent.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/17/2019