J-A14025-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MARK SPENCER | : | No. 1134 EDA 2024 |

Appeal from the Order Entered March 22, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0006984-2023

BEFORE:   PANELLA, P.J.E., NICHOLS, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY NICHOLS, J.:                    **FILED OCTOBER 15, 2025**

The Commonwealth appeals from the trial court's order granting the

motion filed by Appellee Mark Spencer to dismiss the charges against him

pursuant to Pennsylvania Rule of Criminal Procedure 600.  We vacate the order

and remand for further proceedings.

The trial court summarized the factual history of this appeal as follows:

On September 27, 2021, police officers were called to 5423
Chester Avenue in the city and county of Philadelphia, in response
to a shooting.  The victim, Jamul Reavis, suffered bullet wounds
in his neck area, back, and right side.  At the hospital, Mr. Reavis
reported to officers that after [Appellee], his brother Marquise
Spencer [(Co-defendant)], and a third individual had arrived, both
Spencer brothers pulled out firearms, shot Mr. Reavis and fled the
scene.  An arrest warrant was issued on October 1, 2021 for
[Appellee], charging him with aggravated assault, conspiracy and
other related charges for the shooting of Mr. Reavis.  On August
19, 2023, 43 days short of the two-year mark from when the

_____

[*] Retired Senior Judge assigned to the Superior Court.

arrest warrant had been issued, [Appellee] was arrested on the warrant in Jackson, North Carolina while on a family vacation.

Trial Ct. Op., 5/21/24, at 1-2.

On March 14, 2024, Appellee filed a motion to dismiss the charges pursuant to Pa.R.Crim.P. 600 (Rule 600 motion). The trial court conducted a hearing on Appellee's Rule 600 motion on March 22, 2024. At that hearing, the Commonwealth presented a written stipulation marked as Exhibit "C-10." *See* N.T., 3/22/24, at 9-10.

Therein, the Commonwealth and Appellee stipulated that if Detective David Tighe were called as a witness, he would testify that, among other things, he was the detective assigned to investigate the aforementioned shooting; Detective Tighe interviewed the victim and other witnesses about where Appellee might be found and they reported that Appellee was "most likely not living at [his] listed address;" Detective Tighe searched for Appellee's address in arrest records and Bureau of Motor Vehicles records; Detective Tighe obtained an arrest warrant on October 1, 2021; Detective Tighe entered the arrest warrant into the National Crime Information Center (NCIC) and the Philadelphia Crime Information Center (PCIC) databases; Detective Tighe requested assistance from the Southwest Detectives Fugitive Warrant Unit (Warrant Unit) and FBI Violent Crime Taskforce in apprehending Appellee; the Warrant Unit is staffed by three police officers and is assigned hundreds of active arrest warrants at any given time; and a total of seven

attempts were made to arrest Appellee and Co-defendant. Ex. C-10 at 1-2 (unpaginated).

This stipulation did not specify how many of these attempts were to arrest Appellee nor did it provide the dates of those attempts. However, the Commonwealth attached a police record of the Warrant Unit's attempts to arrest Appellee as Exhibit 2B to its brief in opposition to the Rule 600 motion. *See* Commonwealth's Br. in Opp'n, 2/25/24, Ex. 2B; *see also* N.T., 3/22/24, at 12 (the Commonwealth informed the trial court that it had attached a copy of the "apprehend log[]" to its brief). According to this log, the Warrant Unit first attempted to execute the arrest warrant for Appellee at 2020 Gerritt Street on October 25, 2021, but did not locate Appellee at that address. *See* Commonwealth's Br. in Opp'n, 2/25/24, Ex. 2B at 1. On November 3, 2021, the Warrant Unit went to 3432 Old York Road and noted that this location "is abandoned and condemned by L&I."[1] *Id.* The Warrant Unit returned to the Gerritt Street residence on November 29, 2021, and noted that there was "no answer at the front door. The next-door neighbor stated that the house was occupied by a new tenant and [Appellee and Co-defendant] did not live there anymore." *Id.* (some formatting altered). Lastly, the Warrant Unit checked to see if Appellee was in custody anywhere in Pennsylvania on May 22, 2022, November 21, 2022, and May 24, 2023. *See id.* at 1-2; *see also* N.T., 3/22/24, at 15-16 (Appellee's counsel conceded that the police made three

_____

[1] The City of Philadelphia Department of Licenses & Inspections. *See* ***Commonwealth v. Berry***, 167 A.3d 100, 102 (Pa. Super. 2017).

attempts to arrest Appellee at two different locations in October and November of 2021).

The trial court summarized Appellee's testimony and its findings at the Rule 600 hearing as follows:

> [Appellee] asserted that the Commonwealth's efforts to apprehend him demonstrated lack of due diligence as the government failed to use their other computerized system[s] and databases, specifically court dockets, to locate him. [Appellee] credibly testified that in October 2021, he had been living at **** West Albanus Street, Philadelphia with his girlfriend. At this location, he received mail including court documents from both Philadelphia Traffic Court and Philadelphia Family Court beginning in the summer of 2022.[fn1] On August 16, 2023, when [Appellee] was on a family vacation in North Carolina, he was involved in a minor car accident. When [Appellee] called the police for assistance, he was advised of the outstanding warrant in Philadelphia, Pennsylvania and was taken into custody by the local police. [Appellee] had no knowledge of the warrant until then.
>
> > [fn1] Prior to August 14, 2023, [Appellee] had no driver's license. His license lists his address as the home on Albanus Street.
>
> After the trial court found [Appellee's] testimony to be credible, the court inquired as to the reason the [Commonwealth] never undertook attempts to locate [Appellee] utilizing the court documents as his current address was accessible to the Commonwealth. The Commonwealth attorney conceded this, stating, "I agree with you. On a common-sense level, I feel like we should be doing more to double check if there are any outstanding orders." When the court asserted, "[h]e is literally in the system as of [the summer of] [20]22 . . . [the Commonwealth has] got a delay problem here." The Commonwealth attorney again stated, "yes, I agree." The court noted the ease to which the government could have avoided the delay in apprehending [Appellee]. "All you had to do was click . . . . Your two warrant officers . . . could have routinely done checks on those things without having to leave their office by going into the database." The court also noted that the Commonwealth had attorneys located within [the] Family Court for purposes such as dealing with

those delinquent[] on child support payments. Therefore, the court held that the Commonwealth failed to exercise due diligence in apprehending [Appellee] within the time limits allowed by Rule 600 and accordingly granted [Appellee's] motion to dismiss.

Trial Ct. Op., 5/21/24, at 2-3 (citations omitted and some formatting altered).

We add that the record reflects during their attempts to arrest Appellee, the police went to the former residences of his aunt and his mother, respectively. *See* N.T., 3/22/24, at 15, 26-27; *see also* Commonwealth's Br. in Opp'n, 2/25/24, Ex. 2B, at 1. Appellee testified that from 2012 to 2013 he lived with his mother at 3432 Old York Road, and after that he had been moving from place to place, which he described as "house jumping." N.T., 3/22/24, at 27. At the Rule 600 hearing, the Commonwealth argued that the efforts to apprehend Appellee were reasonable and the police had acted with due diligence "in light of the resources they had at the time, given the fact at any given time there are hundreds of active arrest warrants, and, unfortunately, only two officers in Southwest that are tasked to try to make contact or try to execute those arrest warrants." *Id.* at 12.

The Commonwealth filed a timely notice of appeal. Both the Commonwealth and the trial court complied with Pa.R.A.P. 1925.

The Commonwealth raises a single issue for our review:

Did the [trial] court err by dismissing all charges under Rule 600, where the Commonwealth established that it was duly diligent in its extensive attempts to apprehend [Appellee] despite its extremely limited resources, and where fewer than 365 raw calendar days elapsed between [Appellee's] arrest and the dismissal of the charges?

Commonwealth's Brief at 4.

The Commonwealth argues the trial court abused its discretion by dismissing the charges pursuant to Rule 600. *Id.* at 11. The Commonwealth concedes "the dispositive issue is whether the Commonwealth was duly diligent in attempting to apprehend [Appellee] between the October 1, 2021 filing of the criminal complaint and his arrest on September 19, 2023—718 days later." *Id.* at 13. The Commonwealth contends that the stipulation of facts before the trial court indicates that the police did not have any information reflecting that Appellee resided anywhere other the addresses where the police had attempted to serve the arrest warrant. *Id.* at 13-14. The Commonwealth argues that it "established that it exercised due diligence in its extensive attempts to apprehend [Appellee] despite its demonstrably limited resources at the time." *Id.* at 11. The Commonwealth notes that Appellee stipulated that "merely **two** officers were available to execute **hundreds** of arrest warrants at any given time, but also that the investigators assigned to this case repeatedly attempted to locate defendant in the month following the crime **despite** these practical limitations." *Id.* (emphases in original).

The Commonwealth also claims that trial court erred by evaluating the reasonableness of the Commonwealth's conduct by what the Commonwealth did not do instead of the actions the Commonwealth performed. *Id.* at 14-15. Lastly the Commonwealth claims the trial court erred by focusing on information about Appellee's whereabouts "which did not even exist or appear

in publicly accessible records until eight months after the investigation ran cold[.]" *Id.* at 15 (emphasis omitted).

We review challenges to a trial court's ruling on a Rule 600 motion bearing in mind that:

> Our standard of review in evaluating speedy trial issues is whether the trial court abused its discretion, and our scope of review is limited to the trial court's findings and the evidence on the record, viewed in the light most favorable to the prevailing party. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will . . . discretion is abused.
>
> *        *        *
>
> Rule 600 has the dual purpose of both protecting a defendant's constitutional speedy trial rights and protecting society's right to effective prosecution in criminal cases. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it.

*Commonwealth v. Womack*, 315 A.3d 1229, 1237 (Pa. 2024) (citations omitted and some formatting altered); *see also Commonwealth v. Speed*, 323 A.3d 850, 856 n.6 (Pa. Super. 2024) (noting that pursuant to *Womack*, this Court reviews "the entire record, . . . to determine whether the trial court's findings and analysis support its Rule 600 order").

Rule 600 provides that: "[t]rial . . . shall commence within 365 days from the date on which the **complaint** is filed[;]" "trial shall be deemed to commence on the date the trial judge calls the case to trial, or the defendant tenders a plea of guilty . . .[;]" and, if the Commonwealth is not ready for trial

by this deadline, a defendant may file a written motion requesting that the charges be dismissed with prejudice. Pa.R.Crim.P. 600(A)(1), (A)(2)(a), (D)(1) (emphasis added).

Rule 600 allows for extension of the Commonwealth's deadline to commence trial in certain circumstances, directing that:

> periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation.

Pa.R.Crim.P. 600(C)(1).

The Comment to Rule 600 provides, in pertinent part, as follows:

> For purposes of determining the time within which trial must be commenced pursuant to paragraph (A), paragraph (C)(1) makes it clear that any delay in the commencement of trial that is not attributable to the Commonwealth when the Commonwealth has exercised due diligence must be excluded from the computation of time. Thus, the inquiry for a judge in determining whether there is a violation of the time periods in paragraph (A) is whether the delay is caused solely by the Commonwealth when the Commonwealth has failed to exercise due diligence. If the delay occurred as the result of circumstances beyond the Commonwealth's control and despite its due diligence, the time is excluded. In determining whether the Commonwealth has exercised due diligence, the courts have explained that due diligence is fact-specific, to be determined case-by-case; it does not require perfect vigilance and punctilious care, but merely a showing the Commonwealth has put forth a reasonable effort.

Pa.R.Crim.P. 600, cmt. (citations omitted and formatting altered).

"Under Rule 600(c)(1), time between the filing of the complaint and a defendant's arrest may be excluded from calculation of the trial

commencement period, provided the defendant could not be apprehended because his whereabouts were unknown and could not be determined by due diligence." **Commonwealth v. McNear**, 852 A.2d 401, 406 (Pa. Super. 2004) (citing **Commonwealth v. Ingram**, 591 A.2d 734, 737 (Pa. Super. 1991)). "It is the Commonwealth's burden to demonstrate due diligence by a preponderance of the evidence to avail itself of an exclusion under Rule 600." **Commonwealth v. Graves**, 328 A.3d 1005, 1009 (Pa. Super. 2024) (citation omitted). "The matters of availability and due diligence must be judged by what **was** done by the authorities rather than by what was not done." **McNear**, 852 A.2d at 406 (citation omitted and emphasis in original); **see also Ingram**, 591 A.2d at 737 (explaining that "lack of due diligence should not be found simply because other options were available or, in hindsight, would have been more productive" (citations omitted)).

In **McNear**, a Stroud Area Regional Police Department detective "systematically investigated" all of the defendant's possible addresses, determined that all of the defendant's known associates were incarcerated, and that the defendant did not have any family in the Stroudsburg area. **See McNear**, 852 A.2d at 403, 406. Afterwards, the detective entered the arrest warrant for the defendant into the NCIC. **See id.** The defendant was ultimately located in custody in New Jersey. **See id.** at 404. This Court affirmed the trial court's conclusions that the defendant's pre-arrest whereabouts were unknown, and the police could not have determined the defendant's whereabouts by due diligence. **See id.** at 407.

In *Ingram*, the police attempted to serve the arrest warrant at the defendant's last known address, and the defendant's mother informed the police that the defendant had left the city. *Ingram*, 591 A.2d at 737. The police then input the defendant's information into the PCIC database. *Id.* Police officers who were familiar with the defendant visited areas where they had seen the defendant in the past as part of their daily patrols. *Id.* As a result, these patrolling officers apprehended the defendant 196 days after the filing of the criminal complaint. *Id.* The *Ingram* Court held that the police acted with due diligence and had engaged in reasonable efforts to apprehend the defendant. *Id.*

In *Commonwealth v. Collins*, 404 A.2d 1320 (Pa. Super. 1979), this Court held that the Pittsburgh Police Department did not exercise due diligence in apprehending the defendant where the police knew that the defendant was on probation at the time of the offense and had fled Pittsburgh, but the police failed to contact the relevant probation and parole offices and did not request assistance from the Philadelphia Police Department for approximately two months after receiving information that the defendant had an address in Philadelphia. *See Collins*, 404 A.2d at 1322-23.

In *Commonwealth v. Hughes*, 389 A.2d 623 (Pa. Super. 1978), this Court held that the Commonwealth failed to act with due diligence in locating the victim to testify at the defendant's trial where the only action the Commonwealth took was serving a subpoena at the victim's home and "[t]he subpoena was returned undelivered because [the victim] was then

incarcerated in Lancaster County Prison." **Hughes**, 389 A.2d at 625. The **Hughes** Court rejected the Commonwealth's argument that the Court should not consider information obtained about the victim's whereabouts in hindsight and stated that contacting the victim's wife to ascertain the victim's whereabouts was "a minimal effort[.]" **Id.** at 625-26.

Recently, in a non-precedential decision,[2] this Court affirmed a trial court order dismissing the charges against a defendant pursuant to Rule 600 where the trial court found that the police failed to undertake reasonable efforts to apprehend the defendant. **See Commonwealth v. Sutton**, 1922 EDA 2024, 2025 WL 1721059 (Pa. Super. filed June 20, 2025) (unpublished mem.). In **Sutton**, the police executed a search warrant at the defendant's residence as part of an investigation into a non-fatal shooting on December 14, 2021. **See Sutton**, 2025 WL 1721059, at *2. The defendant was not present at the time of the search, but the defendant's sister told the detectives that the defendant was not at home. **See id.** The detectives recovered several items that belonged to the defendant including his driver's license and clothing. **See id.** About a week after executing the search warrant and filing the criminal complaint, the detective turned the case over to the South Detectives Division Warrant Unit (SDD Warrant Unit). **See id.** at *3.

The SDD Warrant Unit conducted four surveillances of the defendant's residence in December of 2021, watching for people coming and going from

---

[2] **See** Pa.R.A.P. 126(b) (stating this Court may rely on unpublished decisions of this Court filed after May 1, 2019, for their persuasive value).

- 11 -

that residence. *See id.* The SDD Warrant Unit subsequently made several attempts to arrest the defendant at his residence: the first in February of 2022, the second in May of 2023, and the third in September of 2023. *See id.* The SDD Warrant Unit ultimately arrested the defendant on February 22, 2024, less than half a mile from his residence on its fifth attempt. *See id.* The trial court in *Sutton* concluded that the police failed to exercise due diligence because the police were aware of the defendant's home address and did not present any evidence that staffing issues at the SDD Warrant Unit was cause "the cause of the Commonwealth's failure to make more of an effort to locate and arrest" the defendant. *Id.* at *6.

Here, the trial court explained:

> In the instant matter, unlike in *McNear* where law enforcement "systematically" attempted to locate the accused by checking all possible address, but akin to *Hughes* where the government failed to use its own database (*i.e.* court dockets) to become aware of the accused['s] current residence, [the Commonwealth] failed to exercise due diligence. Although the Commonwealth may feel it is burdensome to routinely check its various databases to locate an accused after the issuance of a criminal complaint, it is certainly **reasonable** to expect the Commonwealth to do so to satisfy its obligation to exercise due diligence. A simple check of either the Traffic Court or Family Court dockets, which could have been accomplished by a computer or the assistant district attorney assigned to [the] Family Court, would have revealed the current address of [Appellee] well within the time limits of Rule 600. Therefore, even under the lowest metric of proof in our system, the Commonwealth has failed to prove it acted with due diligence in apprehending [Appellee]. Thus, [the Commonwealth's] challenge is without merit, and no relief is due.

Trial Ct. Op., 5/21/24, at 7-8.

Based on our review of the record, and viewing the evidence in the light most favorable to Appellee as the prevailing party, we are constrained to disagree with the trial court's conclusion that the Commonwealth failed to prove it exercised due diligence. *See Womack*, 315 A.3d at 1237. Here, the trial court concluded that the Commonwealth should have searched Traffic Court and/or Family Court dockets for any addresses associated with Appellee. *See* Trial Ct. Op., 5/21/24, at 7-8; *see also* N.T., 3/22/24, at 33-35. This constituted impermissible hindsight analysis of what the police could have done differently to locate Appellee instead of analyzing the actual efforts that the police made. *See McNear*, 852 A.2d at 406; *see also Ingram*, 591 A.2d at 737 (explaining that "lack of due diligence should not be found simply because other options were available or, in hindsight, would have been more productive" (citations omitted)). For these reasons, we conclude that the trial court abused its discretion by misapplying the law when analyzing the Commonwealth's due diligence.

Further, we disagree with the trial court's conclusion that the facts of this case are distinguishable from those of *McNear*. As stated above, in *McNear*, the police searched for the defendant at all of his possible addresses but could not locate the defendant. *See McNear*, 852 A.2d at 406. Further the police did not have any information about any family, friends, or associates of the defendant in the area where the defendant might be found. *See id.* Here, the police attempted to arrest Appellee at two addresses associated with Appellee's relatives. *See* N.T., 3/22/24, at 15, 26-27; Commonwealth's Br.

in Opp'n, 2/25/24, Ex. 2B, at 1. However, while attempting to serve the arrest warrant, the police learned that one residence was vacant, and the Appellee's relatives no longer resided at the other location. *See* Commonwealth's Br. in Opp'n, 2/25/24, Ex. 2B, at 1. There is nothing in the record to indicate that the police had any further information about the location of Appellee or any relatives. Accordingly, the instant case is distinguishable from *Hughes*, *Collins*, and *Sutton* where the police had information about a defendant or a material witness's location or the location of a relative that the police could contact about the defendant or the witness's whereabouts. *See Hughes*, 389 A.2d at 625-26 (the police were aware of the address of the witness's wife); *Collins*, 404 A.2d at 1322-23 (holding that the police did not act with due diligence when they had received information that the defendant was staying with a relative in another city and waited about two months before requesting the police in that city assist in arresting the defendant); *Sutton*, 2025 WL 1721059, at *2-3 (the defendant's sister and physical evidence obtained pursuant to a search warrant confirmed the defendant's current address).

Based on the record before this Court, and setting aside other options which in hindsight would have been more productive, we conclude that the police exercised due diligence in attempting to apprehend Appellee. *See McNear*, 852 A.2d at 406; *Ingram*, 591 A.2d at 737. The three attempts to serve the arrest warrant were reasonable efforts in light of the information about Appellee's whereabouts that the police had at the time. *See Collins*, 404 A.2d at 1322-23; *Hughes*, 389 A.2d at 625-26. After the police

determined that Appellee did not reside at either location, they entered the arrest warrant into law enforcement databases and periodically checked to see if Appellee was incarcerated elsewhere. ***See McNear***, 852 A.2d at 403, 406-07.

For these reasons, we vacate the trial court's order dismissing the charges and remand for further proceedings.

Order vacated. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>10/15/2025</u>

J-A14025-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
        :         PENNSYLVANIA
        Appellant   :
        :
        :
        :
        v.   :
        :
        :
        :
MARK SPENCER   :   No. 1134 EDA 2024

Appeal from the Order Entered March 22, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0006984-2023

BEFORE:    PANELLA, P.J.E., NICHOLS, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY NICHOLS, J.:         **FILED OCTOBER 15, 2025**

The Commonwealth appeals from the trial court's order granting the motion filed by Appellee Mark Spencer to dismiss the charges against him pursuant to Pennsylvania Rule of Criminal Procedure 600. We vacate the order and remand for further proceedings.

The trial court summarized the factual history of this appeal as follows:

On September 27, 2021, police officers were called to 5423 Chester Avenue in the city and county of Philadelphia, in response to a shooting. The victim, Jamul Reavis, suffered bullet wounds in his neck area, back, and right side. At the hospital, Mr. Reavis reported to officers that after [Appellee], his brother Marquise Spencer [(Co-defendant)], and a third individual had arrived, both Spencer brothers pulled out firearms, shot Mr. Reavis and fled the scene. An arrest warrant was issued on October 1, 2021 for [Appellee], charging him with aggravated assault, conspiracy and other related charges for the shooting of Mr. Reavis. On August 19, 2023, 43 days short of the two-year mark from when the

_____

[*] Retired Senior Judge assigned to the Superior Court.

arrest warrant had been issued, [Appellee] was arrested on the warrant in Jackson, North Carolina while on a family vacation.

Trial Ct. Op., 5/21/24, at 1-2.

On March 14, 2024, Appellee filed a motion to dismiss the charges pursuant to Pa.R.Crim.P. 600 (Rule 600 motion). The trial court conducted a hearing on Appellee's Rule 600 motion on March 22, 2024. At that hearing, the Commonwealth presented a written stipulation marked as Exhibit "C-10." *See* N.T., 3/22/24, at 9-10.

Therein, the Commonwealth and Appellee stipulated that if Detective David Tighe were called as a witness, he would testify that, among other things, he was the detective assigned to investigate the aforementioned shooting; Detective Tighe interviewed the victim and other witnesses about where Appellee might be found and they reported that Appellee was "most likely not living at [his] listed address;" Detective Tighe searched for Appellee's address in arrest records and Bureau of Motor Vehicles records; Detective Tighe obtained an arrest warrant on October 1, 2021; Detective Tighe entered the arrest warrant into the National Crime Information Center (NCIC) and the Philadelphia Crime Information Center (PCIC) databases; Detective Tighe requested assistance from the Southwest Detectives Fugitive Warrant Unit (Warrant Unit) and FBI Violent Crime Taskforce in apprehending Appellee; the Warrant Unit is staffed by three police officers and is assigned hundreds of active arrest warrants at any given time; and a total of seven

attempts were made to arrest Appellee and Co-defendant.  Ex. C-10 at 1-2 (unpaginated).

This stipulation did not specify how many of these attempts were to arrest Appellee nor did it provide the dates of those attempts.  However, the Commonwealth attached a police record of the Warrant Unit's attempts to arrest Appellee as Exhibit 2B to its brief in opposition to the Rule 600 motion.  **See** Commonwealth's Br. in Opp'n, 2/25/24, Ex. 2B; **see also** N.T., 3/22/24, at 12 (the Commonwealth informed the trial court that it had attached a copy of the "apprehend log[]" to its brief).  According to this log, the Warrant Unit first attempted to execute the arrest warrant for Appellee at 2020 Gerritt Street on October 25, 2021, but did not locate Appellee at that address.  **See** Commonwealth's Br. in Opp'n, 2/25/24, Ex. 2B at 1.  On November 3, 2021, the Warrant Unit went to 3432 Old York Road and noted that this location "is abandoned and condemned by L&I."[1]  **Id.**  The Warrant Unit returned to the Gerritt Street residence on November 29, 2021, and noted that there was "no answer at the front door.  The next-door neighbor stated that the house was occupied by a new tenant and [Appellee and Co-defendant] did not live there anymore."  **Id.** (some formatting altered).  Lastly, the Warrant Unit checked to see if Appellee was in custody anywhere in Pennsylvania on May 22, 2022, November 21, 2022, and May 24, 2023.  **See id.** at 1-2; **see also** N.T., 3/22/24, at 15-16 (Appellee's counsel conceded that the police made three

---

[1] The City of Philadelphia Department of Licenses & Inspections.  **See Commonwealth v. Berry**, 167 A.3d 100, 102 (Pa. Super. 2017).

attempts to arrest Appellee at two different locations in October and November of 2021).

The trial court summarized Appellee's testimony and its findings at the Rule 600 hearing as follows:

> [Appellee] asserted that the Commonwealth's efforts to apprehend him demonstrated lack of due diligence as the government failed to use their other computerized system[s] and databases, specifically court dockets, to locate him. [Appellee] credibly testified that in October 2021, he had been living at **** West Albanus Street, Philadelphia with his girlfriend. At this location, he received mail including court documents from both Philadelphia Traffic Court and Philadelphia Family Court beginning in the summer of 2022.[fn1] On August 16, 2023, when [Appellee] was on a family vacation in North Carolina, he was involved in a minor car accident. When [Appellee] called the police for assistance, he was advised of the outstanding warrant in Philadelphia, Pennsylvania and was taken into custody by the local police. [Appellee] had no knowledge of the warrant until then.
>
> > [fn1] Prior to August 14, 2023, [Appellee] had no driver's license. His license lists his address as the home on Albanus Street.
>
> After the trial court found [Appellee's] testimony to be credible, the court inquired as to the reason the [Commonwealth] never undertook attempts to locate [Appellee] utilizing the court documents as his current address was accessible to the Commonwealth. The Commonwealth attorney conceded this, stating, "I agree with you. On a common-sense level, I feel like we should be doing more to double check if there are any outstanding orders." When the court asserted, "[h]e is literally in the system as of [the summer of] [20]22 . . . [the Commonwealth has] got a delay problem here." The Commonwealth attorney again stated, "yes, I agree." The court noted the ease to which the government could have avoided the delay in apprehending [Appellee]. "All you had to do was click . . . . Your two warrant officers . . . could have routinely done checks on those things without having to leave their office by going into the database." The court also noted that the Commonwealth had attorneys located within [the] Family Court for purposes such as dealing with

- 4 -

those delinquent[] on child support payments. Therefore, the court held that the Commonwealth failed to exercise due diligence in apprehending [Appellee] within the time limits allowed by Rule 600 and accordingly granted [Appellee's] motion to dismiss.

Trial Ct. Op., 5/21/24, at 2-3 (citations omitted and some formatting altered).

We add that the record reflects during their attempts to arrest Appellee, the police went to the former residences of his aunt and his mother, respectively. **See** N.T., 3/22/24, at 15, 26-27; **see also** Commonwealth's Br. in Opp'n, 2/25/24, Ex. 2B, at 1. Appellee testified that from 2012 to 2013 he lived with his mother at 3432 Old York Road, and after that he had been moving from place to place, which he described as "house jumping." N.T., 3/22/24, at 27. At the Rule 600 hearing, the Commonwealth argued that the efforts to apprehend Appellee were reasonable and the police had acted with due diligence "in light of the resources they had at the time, given the fact at any given time there are hundreds of active arrest warrants, and, unfortunately, only two officers in Southwest that are tasked to try to make contact or try to execute those arrest warrants." **Id.** at 12.

The Commonwealth filed a timely notice of appeal. Both the Commonwealth and the trial court complied with Pa.R.A.P. 1925.

The Commonwealth raises a single issue for our review:

Did the [trial] court err by dismissing all charges under Rule 600, where the Commonwealth established that it was duly diligent in its extensive attempts to apprehend [Appellee] despite its extremely limited resources, and where fewer than 365 raw calendar days elapsed between [Appellee's] arrest and the dismissal of the charges?

- 5 -

Commonwealth's Brief at 4.

The Commonwealth argues the trial court abused its discretion by dismissing the charges pursuant to Rule 600. *Id.* at 11. The Commonwealth concedes "the dispositive issue is whether the Commonwealth was duly diligent in attempting to apprehend [Appellee] between the October 1, 2021 filing of the criminal complaint and his arrest on September 19, 2023—718 days later." *Id.* at 13. The Commonwealth contends that the stipulation of facts before the trial court indicates that the police did not have any information reflecting that Appellee resided anywhere other the addresses where the police had attempted to serve the arrest warrant. *Id.* at 13-14. The Commonwealth argues that it "established that it exercised due diligence in its extensive attempts to apprehend [Appellee] despite its demonstrably limited resources at the time." *Id.* at 11. The Commonwealth notes that Appellee stipulated that "merely **two** officers were available to execute **hundreds** of arrest warrants at any given time, but also that the investigators assigned to this case repeatedly attempted to locate defendant in the month following the crime **despite** these practical limitations." *Id.* (emphases in original).

The Commonwealth also claims that trial court erred by evaluating the reasonableness of the Commonwealth's conduct by what the Commonwealth did not do instead of the actions the Commonwealth performed. *Id.* at 14-15. Lastly the Commonwealth claims the trial court erred by focusing on information about Appellee's whereabouts "which did not even exist or appear

in publicly accessible records until eight months after the investigation ran cold[.]" **Id.** at 15 (emphasis omitted).

We review challenges to a trial court's ruling on a Rule 600 motion bearing in mind that:

> Our standard of review in evaluating speedy trial issues is whether the trial court abused its discretion, and our scope of review is limited to the trial court's findings and the evidence on the record, viewed in the light most favorable to the prevailing party. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will . . . discretion is abused.
>
> *      *      *
>
> Rule 600 has the dual purpose of both protecting a defendant's constitutional speedy trial rights and protecting society's right to effective prosecution in criminal cases. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it.

**Commonwealth v. Womack**, 315 A.3d 1229, 1237 (Pa. 2024) (citations omitted and some formatting altered); **see also Commonwealth v. Speed**, 323 A.3d 850, 856 n.6 (Pa. Super. 2024) (noting that pursuant to **Womack**, this Court reviews "the entire record, . . . to determine whether the trial court's findings and analysis support its Rule 600 order").

Rule 600 provides that: "[t]rial . . . shall commence within 365 days from the date on which the **complaint** is filed[;]" "trial shall be deemed to commence on the date the trial judge calls the case to trial, or the defendant tenders a plea of guilty . . .[;]" and, if the Commonwealth is not ready for trial

by this deadline, a defendant may file a written motion requesting that the charges be dismissed with prejudice. Pa.R.Crim.P. 600(A)(1), (A)(2)(a), (D)(1) (emphasis added).

Rule 600 allows for extension of the Commonwealth's deadline to commence trial in certain circumstances, directing that:

> periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation.

Pa.R.Crim.P. 600(C)(1).

The Comment to Rule 600 provides, in pertinent part, as follows:

> For purposes of determining the time within which trial must be commenced pursuant to paragraph (A), paragraph (C)(1) makes it clear that any delay in the commencement of trial that is not attributable to the Commonwealth when the Commonwealth has exercised due diligence must be excluded from the computation of time. Thus, the inquiry for a judge in determining whether there is a violation of the time periods in paragraph (A) is whether the delay is caused solely by the Commonwealth when the Commonwealth has failed to exercise due diligence. If the delay occurred as the result of circumstances beyond the Commonwealth's control and despite its due diligence, the time is excluded. In determining whether the Commonwealth has exercised due diligence, the courts have explained that due diligence is fact-specific, to be determined case-by-case; it does not require perfect vigilance and punctilious care, but merely a showing the Commonwealth has put forth a reasonable effort.

Pa.R.Crim.P. 600, cmt. (citations omitted and formatting altered).

"Under Rule 600(c)(1), time between the filing of the complaint and a defendant's arrest may be excluded from calculation of the trial

- 8 -

commencement period, provided the defendant could not be apprehended because his whereabouts were unknown and could not be determined by due diligence." ***Commonwealth v. McNear***, 852 A.2d 401, 406 (Pa. Super. 2004) (citing ***Commonwealth v. Ingram***, 591 A.2d 734, 737 (Pa. Super. 1991)). "It is the Commonwealth's burden to demonstrate due diligence by a preponderance of the evidence to avail itself of an exclusion under Rule 600." ***Commonwealth v. Graves***, 328 A.3d 1005, 1009 (Pa. Super. 2024) (citation omitted). "The matters of availability and due diligence must be judged by what **was** done by the authorities rather than by what was not done." ***McNear***, 852 A.2d at 406 (citation omitted and emphasis in original); ***see also Ingram***, 591 A.2d at 737 (explaining that "lack of due diligence should not be found simply because other options were available or, in hindsight, would have been more productive" (citations omitted)).

In ***McNear***, a Stroud Area Regional Police Department detective "systematically investigated" all of the defendant's possible addresses, determined that all of the defendant's known associates were incarcerated, and that the defendant did not have any family in the Stroudsburg area. ***See McNear***, 852 A.2d at 403, 406. Afterwards, the detective entered the arrest warrant for the defendant into the NCIC. ***See id.*** The defendant was ultimately located in custody in New Jersey. ***See id.*** at 404. This Court affirmed the trial court's conclusions that the defendant's pre-arrest whereabouts were unknown, and the police could not have determined the defendant's whereabouts by due diligence. ***See id.*** at 407.

In ***Ingram***, the police attempted to serve the arrest warrant at the defendant's last known address, and the defendant's mother informed the police that the defendant had left the city. ***Ingram***, 591 A.2d at 737. The police then input the defendant's information into the PCIC database. ***Id.*** Police officers who were familiar with the defendant visited areas where they had seen the defendant in the past as part of their daily patrols. ***Id.*** As a result, these patrolling officers apprehended the defendant 196 days after the filing of the criminal complaint. ***Id.*** The ***Ingram*** Court held that the police acted with due diligence and had engaged in reasonable efforts to apprehend the defendant. ***Id.***

In ***Commonwealth v. Collins***, 404 A.2d 1320 (Pa. Super. 1979), this Court held that the Pittsburgh Police Department did not exercise due diligence in apprehending the defendant where the police knew that the defendant was on probation at the time of the offense and had fled Pittsburgh, but the police failed to contact the relevant probation and parole offices and did not request assistance from the Philadelphia Police Department for approximately two months after receiving information that the defendant had an address in Philadelphia. ***See Collins***, 404 A.2d at 1322-23.

In ***Commonwealth v. Hughes***, 389 A.2d 623 (Pa. Super. 1978), this Court held that the Commonwealth failed to act with due diligence in locating the victim to testify at the defendant's trial where the only action the Commonwealth took was serving a subpoena at the victim's home and "[t]he subpoena was returned undelivered because [the victim] was then

- 10 -

incarcerated in Lancaster County Prison." **Hughes**, 389 A.2d at 625. The **Hughes** Court rejected the Commonwealth's argument that the Court should not consider information obtained about the victim's whereabouts in hindsight and stated that contacting the victim's wife to ascertain the victim's whereabouts was "a minimal effort[.]" **Id.** at 625-26.

Recently, in a non-precedential decision,[2] this Court affirmed a trial court order dismissing the charges against a defendant pursuant to Rule 600 where the trial court found that the police failed to undertake reasonable efforts to apprehend the defendant. **See Commonwealth v. Sutton**, 1922 EDA 2024, 2025 WL 1721059 (Pa. Super. filed June 20, 2025) (unpublished mem.). In **Sutton**, the police executed a search warrant at the defendant's residence as part of an investigation into a non-fatal shooting on December 14, 2021. **See Sutton**, 2025 WL 1721059, at *2. The defendant was not present at the time of the search, but the defendant's sister told the detectives that the defendant was not at home. **See id.** The detectives recovered several items that belonged to the defendant including his driver's license and clothing. **See id.** About a week after executing the search warrant and filing the criminal complaint, the detective turned the case over to the South Detectives Division Warrant Unit (SDD Warrant Unit). **See id.** at *3.

The SDD Warrant Unit conducted four surveillances of the defendant's residence in December of 2021, watching for people coming and going from

_____

[2] **See** Pa.R.A.P. 126(b) (stating this Court may rely on unpublished decisions of this Court filed after May 1, 2019, for their persuasive value).

that residence. *See id.* The SDD Warrant Unit subsequently made several attempts to arrest the defendant at his residence: the first in February of 2022, the second in May of 2023, and the third in September of 2023. *See id.* The SDD Warrant Unit ultimately arrested the defendant on February 22, 2024, less than half a mile from his residence on its fifth attempt. *See id.* The trial court in **Sutton** concluded that the police failed to exercise due diligence because the police were aware of the defendant's home address and did not present any evidence that staffing issues at the SDD Warrant Unit was cause "the cause of the Commonwealth's failure to make more of an effort to locate and arrest" the defendant. *Id.* at *6.

Here, the trial court explained:

> In the instant matter, unlike in **McNear** where law enforcement "systematically" attempted to locate the accused by checking all possible address, but akin to **Hughes** where the government failed to use its own database (*i.e.* court dockets) to become aware of the accused['s] current residence, [the Commonwealth] failed to exercise due diligence. Although the Commonwealth may feel it is burdensome to routinely check its various databases to locate an accused after the issuance of a criminal complaint, it is certainly **reasonable** to expect the Commonwealth to do so to satisfy its obligation to exercise due diligence. A simple check of either the Traffic Court or Family Court dockets, which could have been accomplished by a computer or the assistant district attorney assigned to [the] Family Court, would have revealed the current address of [Appellee] well within the time limits of Rule 600. Therefore, even under the lowest metric of proof in our system, the Commonwealth has failed to prove it acted with due diligence in apprehending [Appellee]. Thus, [the Commonwealth's] challenge is without merit, and no relief is due.

Trial Ct. Op., 5/21/24, at 7-8.

- 12 -

Based on our review of the record, and viewing the evidence in the light most favorable to Appellee as the prevailing party, we are constrained to disagree with the trial court's conclusion that the Commonwealth failed to prove it exercised due diligence. *See Womack*, 315 A.3d at 1237. Here, the trial court concluded that the Commonwealth should have searched Traffic Court and/or Family Court dockets for any addresses associated with Appellee. *See* Trial Ct. Op., 5/21/24, at 7-8; *see also* N.T., 3/22/24, at 33-35. This constituted impermissible hindsight analysis of what the police could have done differently to locate Appellee instead of analyzing the actual efforts that the police made. *See McNear*, 852 A.2d at 406; *see also Ingram*, 591 A.2d at 737 (explaining that "lack of due diligence should not be found simply because other options were available or, in hindsight, would have been more productive" (citations omitted)). For these reasons, we conclude that the trial court abused its discretion by misapplying the law when analyzing the Commonwealth's due diligence.

Further, we disagree with the trial court's conclusion that the facts of this case are distinguishable from those of *McNear*. As stated above, in *McNear*, the police searched for the defendant at all of his possible addresses but could not locate the defendant. *See McNear*, 852 A.2d at 406. Further the police did not have any information about any family, friends, or associates of the defendant in the area where the defendant might be found. *See id.* Here, the police attempted to arrest Appellee at two addresses associated with Appellee's relatives. *See* N.T., 3/22/24, at 15, 26-27; Commonwealth's Br.

in Opp'n, 2/25/24, Ex. 2B, at 1. However, while attempting to serve the arrest warrant, the police learned that one residence was vacant, and the Appellee's relatives no longer resided at the other location. *See* Commonwealth's Br. in Opp'n, 2/25/24, Ex. 2B, at 1. There is nothing in the record to indicate that the police had any further information about the location of Appellee or any relatives. Accordingly, the instant case is distinguishable from *Hughes*, *Collins*, and *Sutton* where the police had information about a defendant or a material witness's location or the location of a relative that the police could contact about the defendant or the witness's whereabouts. *See Hughes*, 389 A.2d at 625-26 (the police were aware of the address of the witness's wife); *Collins*, 404 A.2d at 1322-23 (holding that the police did not act with due diligence when they had received information that the defendant was staying with a relative in another city and waited about two months before requesting the police in that city assist in arresting the defendant); *Sutton*, 2025 WL 1721059, at *2-3 (the defendant's sister and physical evidence obtained pursuant to a search warrant confirmed the defendant's current address).

Based on the record before this Court, and setting aside other options which in hindsight would have been more productive, we conclude that the police exercised due diligence in attempting to apprehend Appellee. *See McNear*, 852 A.2d at 406; *Ingram*, 591 A.2d at 737. The three attempts to serve the arrest warrant were reasonable efforts in light of the information about Appellee's whereabouts that the police had at the time. *See Collins*, 404 A.2d at 1322-23; *Hughes*, 389 A.2d at 625-26. After the police

determined that Appellee did not reside at either location, they entered the arrest warrant into law enforcement databases and periodically checked to see if Appellee was incarcerated elsewhere. **_See McNear_**, 852 A.2d at 403, 406-07.

For these reasons, we vacate the trial court's order dismissing the charges and remand for further proceedings.

Order vacated. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/15/2025

- 15 -

J-A14025-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARK SPENCER | : | No. 1134 EDA 2024 |

Appeal from the Order Entered March 22, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0006984-2023

BEFORE: PANELLA, P.J.E., NICHOLS, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY NICHOLS, J.: **FILED OCTOBER 15, 2025**

The Commonwealth appeals from the trial court's order granting the motion filed by Appellee Mark Spencer to dismiss the charges against him pursuant to Pennsylvania Rule of Criminal Procedure 600. We vacate the order and remand for further proceedings.

The trial court summarized the factual history of this appeal as follows:

On September 27, 2021, police officers were called to 5423 Chester Avenue in the city and county of Philadelphia, in response to a shooting. The victim, Jamul Reavis, suffered bullet wounds in his neck area, back, and right side. At the hospital, Mr. Reavis reported to officers that after [Appellee], his brother Marquise Spencer [(Co-defendant)], and a third individual had arrived, both Spencer brothers pulled out firearms, shot Mr. Reavis and fled the scene. An arrest warrant was issued on October 1, 2021 for [Appellee], charging him with aggravated assault, conspiracy and other related charges for the shooting of Mr. Reavis. On August 19, 2023, 43 days short of the two-year mark from when the

_____

[*] Retired Senior Judge assigned to the Superior Court.

arrest warrant had been issued, [Appellee] was arrested on the warrant in Jackson, North Carolina while on a family vacation.

Trial Ct. Op., 5/21/24, at 1-2.

On March 14, 2024, Appellee filed a motion to dismiss the charges pursuant to Pa.R.Crim.P. 600 (Rule 600 motion). The trial court conducted a hearing on Appellee's Rule 600 motion on March 22, 2024. At that hearing, the Commonwealth presented a written stipulation marked as Exhibit "C-10." *See* N.T., 3/22/24, at 9-10.

Therein, the Commonwealth and Appellee stipulated that if Detective David Tighe were called as a witness, he would testify that, among other things, he was the detective assigned to investigate the aforementioned shooting; Detective Tighe interviewed the victim and other witnesses about where Appellee might be found and they reported that Appellee was "most likely not living at [his] listed address;" Detective Tighe searched for Appellee's address in arrest records and Bureau of Motor Vehicles records; Detective Tighe obtained an arrest warrant on October 1, 2021; Detective Tighe entered the arrest warrant into the National Crime Information Center (NCIC) and the Philadelphia Crime Information Center (PCIC) databases; Detective Tighe requested assistance from the Southwest Detectives Fugitive Warrant Unit (Warrant Unit) and FBI Violent Crime Taskforce in apprehending Appellee; the Warrant Unit is staffed by three police officers and is assigned hundreds of active arrest warrants at any given time; and a total of seven

- 2 -

attempts were made to arrest Appellee and Co-defendant. Ex. C-10 at 1-2 (unpaginated).

This stipulation did not specify how many of these attempts were to arrest Appellee nor did it provide the dates of those attempts. However, the Commonwealth attached a police record of the Warrant Unit's attempts to arrest Appellee as Exhibit 2B to its brief in opposition to the Rule 600 motion. **See** Commonwealth's Br. in Opp'n, 2/25/24, Ex. 2B; **see also** N.T., 3/22/24, at 12 (the Commonwealth informed the trial court that it had attached a copy of the "apprehend log[]" to its brief). According to this log, the Warrant Unit first attempted to execute the arrest warrant for Appellee at 2020 Gerritt Street on October 25, 2021, but did not locate Appellee at that address. **See** Commonwealth's Br. in Opp'n, 2/25/24, Ex. 2B at 1. On November 3, 2021, the Warrant Unit went to 3432 Old York Road and noted that this location "is abandoned and condemned by L&I."[1] **Id.** The Warrant Unit returned to the Gerritt Street residence on November 29, 2021, and noted that there was "no answer at the front door. The next-door neighbor stated that the house was occupied by a new tenant and [Appellee and Co-defendant] did not live there anymore." **Id.** (some formatting altered). Lastly, the Warrant Unit checked to see if Appellee was in custody anywhere in Pennsylvania on May 22, 2022, November 21, 2022, and May 24, 2023. **See id.** at 1-2; **see also** N.T., 3/22/24, at 15-16 (Appellee's counsel conceded that the police made three

_____

[1] The City of Philadelphia Department of Licenses & Inspections. **See** **Commonwealth v. Berry**, 167 A.3d 100, 102 (Pa. Super. 2017).

attempts to arrest Appellee at two different locations in October and November of 2021).

The trial court summarized Appellee's testimony and its findings at the Rule 600 hearing as follows:

> [Appellee] asserted that the Commonwealth's efforts to apprehend him demonstrated lack of due diligence as the government failed to use their other computerized system[s] and databases, specifically court dockets, to locate him. [Appellee] credibly testified that in October 2021, he had been living at **** West Albanus Street, Philadelphia with his girlfriend. At this location, he received mail including court documents from both Philadelphia Traffic Court and Philadelphia Family Court beginning in the summer of 2022.[fn1] On August 16, 2023, when [Appellee] was on a family vacation in North Carolina, he was involved in a minor car accident. When [Appellee] called the police for assistance, he was advised of the outstanding warrant in Philadelphia, Pennsylvania and was taken into custody by the local police. [Appellee] had no knowledge of the warrant until then.
>
> > [fn1] Prior to August 14, 2023, [Appellee] had no driver's license. His license lists his address as the home on Albanus Street.
>
> After the trial court found [Appellee's] testimony to be credible, the court inquired as to the reason the [Commonwealth] never undertook attempts to locate [Appellee] utilizing the court documents as his current address was accessible to the Commonwealth. The Commonwealth attorney conceded this, stating, "I agree with you. On a common-sense level, I feel like we should be doing more to double check if there are any outstanding orders." When the court asserted, "[h]e is literally in the system as of [the summer of] [20]22 . . . [the Commonwealth has] got a delay problem here." The Commonwealth attorney again stated, "yes, I agree." The court noted the ease to which the government could have avoided the delay in apprehending [Appellee]. "All you had to do was click . . . . Your two warrant officers . . . could have routinely done checks on those things without having to leave their office by going into the database." The court also noted that the Commonwealth had attorneys located within [the] Family Court for purposes such as dealing with

- 4 -

those delinquent[] on child support payments. Therefore, the court held that the Commonwealth failed to exercise due diligence in apprehending [Appellee] within the time limits allowed by Rule 600 and accordingly granted [Appellee's] motion to dismiss.

Trial Ct. Op., 5/21/24, at 2-3 (citations omitted and some formatting altered).

We add that the record reflects during their attempts to arrest Appellee, the police went to the former residences of his aunt and his mother, respectively. *See* N.T., 3/22/24, at 15, 26-27; *see also* Commonwealth's Br. in Opp'n, 2/25/24, Ex. 2B, at 1. Appellee testified that from 2012 to 2013 he lived with his mother at 3432 Old York Road, and after that he had been moving from place to place, which he described as "house jumping." N.T., 3/22/24, at 27. At the Rule 600 hearing, the Commonwealth argued that the efforts to apprehend Appellee were reasonable and the police had acted with due diligence "in light of the resources they had at the time, given the fact at any given time there are hundreds of active arrest warrants, and, unfortunately, only two officers in Southwest that are tasked to try to make contact or try to execute those arrest warrants." *Id.* at 12.

The Commonwealth filed a timely notice of appeal. Both the Commonwealth and the trial court complied with Pa.R.A.P. 1925.

The Commonwealth raises a single issue for our review:

Did the [trial] court err by dismissing all charges under Rule 600, where the Commonwealth established that it was duly diligent in its extensive attempts to apprehend [Appellee] despite its extremely limited resources, and where fewer than 365 raw calendar days elapsed between [Appellee's] arrest and the dismissal of the charges?

Commonwealth's Brief at 4.

The Commonwealth argues the trial court abused its discretion by dismissing the charges pursuant to Rule 600. *Id.* at 11. The Commonwealth concedes "the dispositive issue is whether the Commonwealth was duly diligent in attempting to apprehend [Appellee] between the October 1, 2021 filing of the criminal complaint and his arrest on September 19, 2023—718 days later." *Id.* at 13. The Commonwealth contends that the stipulation of facts before the trial court indicates that the police did not have any information reflecting that Appellee resided anywhere other the addresses where the police had attempted to serve the arrest warrant. *Id.* at 13-14. The Commonwealth argues that it "established that it exercised due diligence in its extensive attempts to apprehend [Appellee] despite its demonstrably limited resources at the time." *Id.* at 11. The Commonwealth notes that Appellee stipulated that "merely **two** officers were available to execute **hundreds** of arrest warrants at any given time, but also that the investigators assigned to this case repeatedly attempted to locate defendant in the month following the crime **despite** these practical limitations." *Id.* (emphases in original).

The Commonwealth also claims that trial court erred by evaluating the reasonableness of the Commonwealth's conduct by what the Commonwealth did not do instead of the actions the Commonwealth performed. *Id.* at 14-15. Lastly the Commonwealth claims the trial court erred by focusing on information about Appellee's whereabouts "which did not even exist or appear

in publicly accessible records until eight months after the investigation ran cold[.]" *Id.* at 15 (emphasis omitted).

We review challenges to a trial court's ruling on a Rule 600 motion bearing in mind that:

> Our standard of review in evaluating speedy trial issues is whether the trial court abused its discretion, and our scope of review is limited to the trial court's findings and the evidence on the record, viewed in the light most favorable to the prevailing party. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will . . . discretion is abused.
>
> *    *    *
>
> Rule 600 has the dual purpose of both protecting a defendant's constitutional speedy trial rights and protecting society's right to effective prosecution in criminal cases. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it.

*Commonwealth v. Womack*, 315 A.3d 1229, 1237 (Pa. 2024) (citations omitted and some formatting altered); *see also Commonwealth v. Speed*, 323 A.3d 850, 856 n.6 (Pa. Super. 2024) (noting that pursuant to *Womack*, this Court reviews "the entire record, . . . to determine whether the trial court's findings and analysis support its Rule 600 order").

Rule 600 provides that: "[t]rial . . . shall commence within 365 days from the date on which the **complaint** is filed[;]" "trial shall be deemed to commence on the date the trial judge calls the case to trial, or the defendant tenders a plea of guilty . . .[;]" and, if the Commonwealth is not ready for trial

by this deadline, a defendant may file a written motion requesting that the charges be dismissed with prejudice. Pa.R.Crim.P. 600(A)(1), (A)(2)(a), (D)(1) (emphasis added).

Rule 600 allows for extension of the Commonwealth's deadline to commence trial in certain circumstances, directing that:

> periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation.

Pa.R.Crim.P. 600(C)(1).

The Comment to Rule 600 provides, in pertinent part, as follows:

> For purposes of determining the time within which trial must be commenced pursuant to paragraph (A), paragraph (C)(1) makes it clear that any delay in the commencement of trial that is not attributable to the Commonwealth when the Commonwealth has exercised due diligence must be excluded from the computation of time. Thus, the inquiry for a judge in determining whether there is a violation of the time periods in paragraph (A) is whether the delay is caused solely by the Commonwealth when the Commonwealth has failed to exercise due diligence. If the delay occurred as the result of circumstances beyond the Commonwealth's control and despite its due diligence, the time is excluded. In determining whether the Commonwealth has exercised due diligence, the courts have explained that due diligence is fact-specific, to be determined case-by-case; it does not require perfect vigilance and punctilious care, but merely a showing the Commonwealth has put forth a reasonable effort.

Pa.R.Crim.P. 600, cmt. (citations omitted and formatting altered).

"Under Rule 600(c)(1), time between the filing of the complaint and a defendant's arrest may be excluded from calculation of the trial

commencement period, provided the defendant could not be apprehended because his whereabouts were unknown and could not be determined by due diligence." ***Commonwealth v. McNear***, 852 A.2d 401, 406 (Pa. Super. 2004) (citing ***Commonwealth v. Ingram***, 591 A.2d 734, 737 (Pa. Super. 1991)). "It is the Commonwealth's burden to demonstrate due diligence by a preponderance of the evidence to avail itself of an exclusion under Rule 600." ***Commonwealth v. Graves***, 328 A.3d 1005, 1009 (Pa. Super. 2024) (citation omitted). "The matters of availability and due diligence must be judged by what **was** done by the authorities rather than by what was not done." ***McNear***, 852 A.2d at 406 (citation omitted and emphasis in original); ***see also Ingram***, 591 A.2d at 737 (explaining that "lack of due diligence should not be found simply because other options were available or, in hindsight, would have been more productive" (citations omitted)).

In ***McNear***, a Stroud Area Regional Police Department detective "systematically investigated" all of the defendant's possible addresses, determined that all of the defendant's known associates were incarcerated, and that the defendant did not have any family in the Stroudsburg area. ***See McNear***, 852 A.2d at 403, 406. Afterwards, the detective entered the arrest warrant for the defendant into the NCIC. ***See id.*** The defendant was ultimately located in custody in New Jersey. ***See id.*** at 404. This Court affirmed the trial court's conclusions that the defendant's pre-arrest whereabouts were unknown, and the police could not have determined the defendant's whereabouts by due diligence. ***See id.*** at 407.

In **Ingram**, the police attempted to serve the arrest warrant at the defendant's last known address, and the defendant's mother informed the police that the defendant had left the city. **Ingram**, 591 A.2d at 737. The police then input the defendant's information into the PCIC database. **Id.** Police officers who were familiar with the defendant visited areas where they had seen the defendant in the past as part of their daily patrols. **Id.** As a result, these patrolling officers apprehended the defendant 196 days after the filing of the criminal complaint. **Id.** The **Ingram** Court held that the police acted with due diligence and had engaged in reasonable efforts to apprehend the defendant. **Id.**

In **Commonwealth v. Collins**, 404 A.2d 1320 (Pa. Super. 1979), this Court held that the Pittsburgh Police Department did not exercise due diligence in apprehending the defendant where the police knew that the defendant was on probation at the time of the offense and had fled Pittsburgh, but the police failed to contact the relevant probation and parole offices and did not request assistance from the Philadelphia Police Department for approximately two months after receiving information that the defendant had an address in Philadelphia. **See Collins**, 404 A.2d at 1322-23.

In **Commonwealth v. Hughes**, 389 A.2d 623 (Pa. Super. 1978), this Court held that the Commonwealth failed to act with due diligence in locating the victim to testify at the defendant's trial where the only action the Commonwealth took was serving a subpoena at the victim's home and "[t]he subpoena was returned undelivered because [the victim] was then

- 10 -

incarcerated in Lancaster County Prison." *Hughes*, 389 A.2d at 625. The *Hughes* Court rejected the Commonwealth's argument that the Court should not consider information obtained about the victim's whereabouts in hindsight and stated that contacting the victim's wife to ascertain the victim's whereabouts was "a minimal effort[.]" *Id.* at 625-26.

Recently, in a non-precedential decision,[2] this Court affirmed a trial court order dismissing the charges against a defendant pursuant to Rule 600 where the trial court found that the police failed to undertake reasonable efforts to apprehend the defendant. *See Commonwealth v. Sutton*, 1922 EDA 2024, 2025 WL 1721059 (Pa. Super. filed June 20, 2025) (unpublished mem.). In *Sutton*, the police executed a search warrant at the defendant's residence as part of an investigation into a non-fatal shooting on December 14, 2021. *See Sutton*, 2025 WL 1721059, at *2. The defendant was not present at the time of the search, but the defendant's sister told the detectives that the defendant was not at home. *See id.* The detectives recovered several items that belonged to the defendant including his driver's license and clothing. *See id.* About a week after executing the search warrant and filing the criminal complaint, the detective turned the case over to the South Detectives Division Warrant Unit (SDD Warrant Unit). *See id.* at *3.

The SDD Warrant Unit conducted four surveillances of the defendant's residence in December of 2021, watching for people coming and going from

---

[2] *See* Pa.R.A.P. 126(b) (stating this Court may rely on unpublished decisions of this Court filed after May 1, 2019, for their persuasive value).

that residence. *See id.* The SDD Warrant Unit subsequently made several attempts to arrest the defendant at his residence: the first in February of 2022, the second in May of 2023, and the third in September of 2023. *See id.* The SDD Warrant Unit ultimately arrested the defendant on February 22, 2024, less than half a mile from his residence on its fifth attempt. *See id.* The trial court in *Sutton* concluded that the police failed to exercise due diligence because the police were aware of the defendant's home address and did not present any evidence that staffing issues at the SDD Warrant Unit was cause "the cause of the Commonwealth's failure to make more of an effort to locate and arrest" the defendant. *Id.* at *6.

Here, the trial court explained:

> In the instant matter, unlike in *McNear* where law enforcement "systematically" attempted to locate the accused by checking all possible address, but akin to *Hughes* where the government failed to use its own database (*i.e.* court dockets) to become aware of the accused['s] current residence, [the Commonwealth] failed to exercise due diligence. Although the Commonwealth may feel it is burdensome to routinely check its various databases to locate an accused after the issuance of a criminal complaint, it is certainly **reasonable** to expect the Commonwealth to do so to satisfy its obligation to exercise due diligence. A simple check of either the Traffic Court or Family Court dockets, which could have been accomplished by a computer or the assistant district attorney assigned to [the] Family Court, would have revealed the current address of [Appellee] well within the time limits of Rule 600. Therefore, even under the lowest metric of proof in our system, the Commonwealth has failed to prove it acted with due diligence in apprehending [Appellee]. Thus, [the Commonwealth's] challenge is without merit, and no relief is due.

Trial Ct. Op., 5/21/24, at 7-8.

Based on our review of the record, and viewing the evidence in the light most favorable to Appellee as the prevailing party, we are constrained to disagree with the trial court's conclusion that the Commonwealth failed to prove it exercised due diligence. **See Womack**, 315 A.3d at 1237. Here, the trial court concluded that the Commonwealth should have searched Traffic Court and/or Family Court dockets for any addresses associated with Appellee. **See** Trial Ct. Op., 5/21/24, at 7-8; **see also** N.T., 3/22/24, at 33-35. This constituted impermissible hindsight analysis of what the police could have done differently to locate Appellee instead of analyzing the actual efforts that the police made. **See McNear**, 852 A.2d at 406; **see also Ingram**, 591 A.2d at 737 (explaining that "lack of due diligence should not be found simply because other options were available or, in hindsight, would have been more productive" (citations omitted)). For these reasons, we conclude that the trial court abused its discretion by misapplying the law when analyzing the Commonwealth's due diligence.

Further, we disagree with the trial court's conclusion that the facts of this case are distinguishable from those of **McNear**. As stated above, in **McNear**, the police searched for the defendant at all of his possible addresses but could not locate the defendant. **See McNear**, 852 A.2d at 406. Further the police did not have any information about any family, friends, or associates of the defendant in the area where the defendant might be found. **See id.** Here, the police attempted to arrest Appellee at two addresses associated with Appellee's relatives. **See** N.T., 3/22/24, at 15, 26-27; Commonwealth's Br.

- 13 -

in Opp'n, 2/25/24, Ex. 2B, at 1. However, while attempting to serve the arrest warrant, the police learned that one residence was vacant, and the Appellee's relatives no longer resided at the other location. *See* Commonwealth's Br. in Opp'n, 2/25/24, Ex. 2B, at 1. There is nothing in the record to indicate that the police had any further information about the location of Appellee or any relatives. Accordingly, the instant case is distinguishable from *Hughes*, *Collins*, and *Sutton* where the police had information about a defendant or a material witness's location or the location of a relative that the police could contact about the defendant or the witness's whereabouts. *See Hughes*, 389 A.2d at 625-26 (the police were aware of the address of the witness's wife); *Collins*, 404 A.2d at 1322-23 (holding that the police did not act with due diligence when they had received information that the defendant was staying with a relative in another city and waited about two months before requesting the police in that city assist in arresting the defendant); *Sutton*, 2025 WL 1721059, at *2-3 (the defendant's sister and physical evidence obtained pursuant to a search warrant confirmed the defendant's current address).

Based on the record before this Court, and setting aside other options which in hindsight would have been more productive, we conclude that the police exercised due diligence in attempting to apprehend Appellee. *See McNear*, 852 A.2d at 406; *Ingram*, 591 A.2d at 737. The three attempts to serve the arrest warrant were reasonable efforts in light of the information about Appellee's whereabouts that the police had at the time. *See Collins*, 404 A.2d at 1322-23; *Hughes*, 389 A.2d at 625-26. After the police

determined that Appellee did not reside at either location, they entered the arrest warrant into law enforcement databases and periodically checked to see if Appellee was incarcerated elsewhere. ***See McNear***, 852 A.2d at 403, 406-07.

For these reasons, we vacate the trial court's order dismissing the charges and remand for further proceedings.

Order vacated. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/15/2025